Leon LUXEMBURG

v.

**TEXAS A & M UNIVERSITY SYSTEM, Dr. Larry S. Slotta, Dr. William J. Merrell, Dr. James M. McCloy, Individually and in their official capacities with Texas A & M University at Galveston/Texas A & M University, Galveston Campus Faculty.**

Civ. A. No. G–93–39.

United States District Court, S.D. Texas, Galveston Division.

Sept. 19, 1994.

Laurence W. Watts, Watts & Glover, Houston, TX, for plaintiff.

Lydia Kimble–Wright, Asst. Atty. Gen., Austin, TX, for Texas A & M University System.

Lydia Kimble–Wright, Asst. Atty. Gen., Jose Manuel Rangel, Tex. Atty. General's Office, Austin, TX, for Dr. Larry S. Slotta.

Dan Morales, Atty. Gen. of Texas, Atty. General's Office, Lydia Kimble–Wright, Asst. Atty. Gen., Toni Hunter, Atty. General's Office, State of Tex., George R. Jennings, Asst. Atty. Gen., Austin, TX, for Dr. William J. Merrell and Dr. James M. McCloy.

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

■ Plaintiff Leon Luxemburg brought this employment discrimination suit pleading misrepresentation; false light invasion of privacy; deprivation of rights under the First and Fourteenth Amendments of the United States Constitution pursuant to 42 U.S.C. § 1983; racial, national origin, and religious discrimination under 42 U.S.C. § 2000e et seq. (Title VII); the Texas "Whistleblower" statute, Tex.Rev.Civ.Stat. art. 6252–16a; and violations of the Texas Constitution. By earlier order, this Court dismissed all causes of action except the Title VII claims against Texas A & M University at Galveston ("TA-MUG") and the individual Defendants in their official capacity and the § 1983 free-speech and state-law claims against the individual Defendants in their individual capacities. The Court subsequently granted the Plaintiff's partial motion to dismiss the state-law claims. Before the Court now are Defendants Merrell's and McCloy's motion for summary judgment and Defendant Slotta's motion for summary judgment on the Title VII and § 1983 claims, arguing that the Plaintiff has failed to show that the Defendants intentionally discriminated against him for purposes of a Title VII claim and that the Defendants are not liable under the § 1983 free-speech claims. The Plaintiff has failed to respond to the Defendants' motions in a timely manner, and both Defendants' motions are **GRANTED.**[1]

---

1. In its Order on the Defendants' motion to dismiss (Instrument # 42), the Court allowed both parties sixty days from the date of the Order for continued discovery, after which the Defendants were to file any dispositive motions. The Plaintiff was allowed twenty days after such filing to respond, as is customary under this Court's Local Rule 6(E). Defendants Merrell and McCloy filed their motion for summary judgment on July 5, 1994, and Defendant Slotta filed his motion on July 15, 1994. The Plaintiff filed his response and motion to file out of time on August 30, 1994, well after the allotted time, without any good cause shown. The Court denied the requested time extension. Under Local Rule 6, therefore, the Defendants' motions for summary judgment are treated as unopposed. Nevertheless, in fairness to the Plaintiff, the Court has

## I. Background

Leon Luxemburg is a Jewish immigrant from Russia who was employed in 1989 as a part-time instructor in the Maritime College of TAMUG. Dr. Luxemburg began discussions in the spring of 1990 with TAMUG about a possible tenure-track professorship in the University. On May 10, 1990, Dr. Larry Slotta, the Director of Engineering Programs at TAMUG, sent Luxemburg a memorandum outlining discussions the two men had already had about the terms of Luxemburg's employment. Slotta wrote that, because Luxemburg had good prospects for bringing significant research projects with him to TAMUG, Luxemburg's salary would be "at least $41,000 for two semesters," with TAMUG to cover two-thirds of this salary and "you to provide the other ⅓ of your support for these semesters and full time during the summer months." (Slotta's motion for summary judgment, Exhibit 1). The same terms of employment compensation were repeated in a letter sent by Slotta on August 8, 1990, that confirmed oral discussions the two men had concerning Luxemburg's employment. Luxemburg was subsequently hired as a tenure-track faculty member of TAMUG.

Thus, from the very beginning of this case, all parties explicitly understood that TAMUG would provide only two-thirds of Luxemburg's proposed salary. Although the August 13, 1990 contract lists Luxemburg's salary as $4,555.56 per month, on September 1st a Form 500R Request was filed breaking down this payment into components that reflected the two-thirds/one-third division the parties had already discussed. (See Slotta's motion for summary judgment, Exhibit 5). According to that form, TAMUG would pay 100% of Luxemburg's monthly salary of $4,555.56, from September 1 to November 30, 1990, after which TAMUG's contribution was to drop to 57.14% of the same monthly salary. The remaining 42.86% of salary for all months beginning December 1st was to come from the research grant money to be brought into the University by Luxemburg and administered to him through the Texas A & M University Research Foundation. Although the parties are less than clear on the point, it appears that no money could be disbursed to Luxemburg from the Research Foundation until the grant monies (which never materialized) were first placed in the Foundation. (See Slotta's motion for summary judgment, Exhibit 6). There is no record that Luxemburg made any objection to the Form 500R Request breakdown of his salary.

Unfortunately, relations between Slotta and Luxemburg progressively deteriorated into a state of personal animosity of the most poisonous kind, which began to generate conduct that would have taxed the imagination of Lewis Carroll. Among other incidents, Slotta referred to Luxemburg's resume as "toilet paper"; Luxemburg filed complaints against Slotta; Slotta filed charges against Luxemburg for assault with a gun, causing Luxemburg's arrest on campus (trial is currently pending); Luxemburg was assigned an "office" in an attic; and, almost incredibly, Slotta made charges to the FBI that Luxemburg was acting as a KGB agent (for which the FBI found no supporting evidence whatsoever). All of this, the Court notes, was done by educated professionals charged with the important task of training collegiate minds for the "real world."

Against the backdrop of such ludicrous behavior, the following events occurred which are relevant to these causes of action. In September 1990, Slotta invited faculty members to attend a Saturday seminar and workshop on engineering education given by Dr. Kenneth Williamson. Luxemburg, who observes the Jewish Sabbath, informed Slotta that he would not be able to attend for religious reasons. Luxemburg claims that his non-attendance was later one basis for what he claims is a negative evaluation given him by Slotta, one that Luxemburg claims is evidence of the Defendant's hostility towards Jews.

examined Plaintiff's response for any authority that may be relevant on any matter presently before the Court.

The Court remains mindful of the Fifth Circuit's directive that the failure to provide a written response to a motion under local rules does not warrant the issue of an automatic grant of the motion. *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 707 (5th Cir.1985).

In November 1990, Slotta reviewed Luxemburg's first research proposal to the National Science Foundation and made several changes that Luxemburg claims fraudulently overstated equipment costs and incorrectly listed minority-student participation. On November 15, 1990, Luxemburg filed a written complaint about these alleged improprieties with Defendant McCloy. Luxemburg claims that the reduction in his salary that forms the basis of this suit was the direct, retaliatory result of his complaint about Slotta's behavior in this matter.

Unfortunately, the proposed research money that all parties seem to have assumed Luxemburg would win or would bring with him to TAMUG did not materialize, and on or about February 1, 1991 his monthly salary was reduced. A January 24, 1991 letter from TAMUG's Controller, Deborah Kraft, shows that the payroll problem began on December 1, 1990—the very date when TAMUG's 100% funding of Luxemburg's salary was already pre-scheduled to be reduced to 57.14%. (Slotta's motion for summary judgment, Exhibit 6). His monthly paycheck was apparently reduced to reflect overpayments for December and January, and all payments after February 1, 1991 seem to have been reduced to reflect TAMUG's 57.14% obligation. The Plaintiff filed a charge of employment discrimination with the EEOC on or about November 15, 1990. The EEOC denied his claim, but and granted a right to sue letter.

## II. Standard of Review

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A fact is material if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists if there is a genuine issue for trial that must be decided by the trier of fact. In other words, summary judgment should not be granted if the evidence indicates that a reasonable fact-finder could find in favor of the nonmoving party. *Id. See*

*also Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In ruling on a Motion for Summary Judgment, the Court must accept the evidence of the nonmoving party and draw all justifiable inferences in his favor. Credibility determinations, weighing of the evidence, and the drawing of reasonable inferences are left to the trier of fact. *Anderson v. Liberty Lobby, supra,* 477 U.S. at 255, 106 S.Ct. at 2513–14.

Under Fed.R.Civ.P. 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once this burden is met, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita, supra,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Leonard v. Dixie Well Serv. & Supply, Inc.,* 828 F.2d 291, 294 (5th Cir. 1987).

Where the moving party has met its Rule 56(c) burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no *genuine issue for trial." Matsushita, supra,* 475 U.S. at 586–87, 106 S.Ct. at 1356 (quoting Fed.R.Civ.P. 56(e)) (emphasis in original). As stated before, the nonmovant in this case did not timely file a response to the Defendants' motions for summary judgment.

## III. The Title VII Claims

Section 703(a)(1) of Title VII of the Civil Rights Act of 1964 provides in relevant part:

It shall be an unlawful employment practice for an employer to ... discriminate against any individual with respect to his

418

compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a)(1).

A Title VII retaliation claim requires *intentional* discrimination, and under the familiar *McDonnell Douglas/Burdine* framework, the Court employs a three-part test designed to determine the motivation of the defendant in taking the challenged action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255 n. 10, 101 S.Ct. 1089, 1095 n. 10, 67 L.Ed.2d 207 (1981). First, the plaintiff is required to establish a prima facie case wherein he must establish the elements of the discrimination claim. If the plaintiff meets these requirements, a presumption of discrimination arises. *Bodenheimer v. PPG Industries, Inc.*, 5 F.3d 955 (5th Cir.1993).

 Second, the defendant may then rebut this presumption by articulating a legitimate, nondiscriminatory reason for the alleged discriminatory action. *Olitsky v. Spencer Gifts, Inc.*, 964 F.2d 1471 (5th Cir. 1992). An employer meets this burden by proffering admissible evidence of an explanation that would be legally sufficient to justify a judgment for the employer. *Guthrie v. Tifco Indus.*, 941 F.2d 374, 376 (5th Cir. 1991). The defendant need not *persuade* the trier of fact that there was no intentional discrimination; he need only produce evidence on that point. *St. Mary's Honor Center v. Hicks*, —— U.S. ——, ——, 113 S.Ct. 2742, 2747–48, 125 L.Ed.2d 407, 416 (1993).

 Third, once the employer satisfies this burden, the presumption of discrimination established by the employee's prima facie case dissolves. *Burdine, supra*, 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10. The employee's burden of persuasion then arises, and the plaintiff must produce evidence that the employer's proffered reasons are mere pretexts, the real reason for the action having been based on an impermissible animus. *Id.* at 256, 101 S.Ct. at 1095; *Bodenheimer, supra*, 5 F.3d at 959.

 In this case, the Court finds that even where the record as a whole is looked at in the light most favorable to the nonmoving party, no reasonable fact finder could determine that the Plaintiff has made a prima facie case of retaliatory discrimination. A plaintiff must show three things to establish a prima facie case of retaliation: (1) he engaged in an activity protected by Title VII; (2) an adverse employment action followed; and (3) there was some causal connection between the activity and the adverse action. *Collins v. Baptist Memorial Geriatric Center*, 937 F.2d 190, 193 (5th Cir.1991). The plaintiff need not show that the protected activity was the sole factor motivating the adverse action, but he must show that "but for" the protected activity, he would not have been subjected to the action he claims is discriminatory. *Id.; Jones v. Flagship Int'l*, 793 F.2d 714, 724 (5th Cir.1986).

Assuming *arguendo* that Luxemburg is able to show the first two prongs of his prima facie case, he is clearly unable to demonstrate that but for actions protected by Title VII he would not have been discriminated against. Indeed, it is unclear exactly *what* actions beyond the vague charge of "employment discrimination" the Plaintiff even contends fall within his Title VII complaint. (See Plaintiff's Second Amended Complaint, Instrument #31, at 17). This Court earlier characterized Luxemburg's complaint as "rambling" (see Order to Dismiss, Instrument #42, at 2), and the Court has expended an unwarranted amount of its valuable time trying to decipher Plaintiff's Title VII claims. Under a liberal reading of Plaintiff's complaint, however, Luxemburg appears to allege that he was "criticized" by Slotta in a faculty evaluation because he is a Russian immigrant of the Jewish faith; that his pay was reduced for similar reasons; and that Defendants Merrell and McCloy ratified Slotta's actions.

The Plaintiff, however, has not produced *any* evidence beyond his pleadings to support these charges. Indeed, in his Second Amended Complaint, Luxemburg even fails to articulate the content of Slotta's alleged criticism. And although his Response to the Defendants' Motions for Summary Judgment was untimely filed, even a glance at Slotta's faculty report appended thereto clearly

shows the absence of a direct, causal relation between a discriminatory act and a racial/religious bias on Slotta's part. (See Plaintiff's Response, Instrument # 57, Defendant's Exhibit 71).

 Luxemburg claims that Slotta filed a negative faculty report on him because Luxemburg failed to attend a Saturday seminar for religious reasons. Dr. Slotta's actual report, however, is far from the uniformly critical document Plaintiff makes it out to be. In fact, Slotta gave Luxemburg *positive* evaluations in two out of the three categories listed in the report (teaching and scholarly activities). In the one area rated as unsatisfactory (faculty service), Slotta's comments clearly indicate a broad range of dissatisfaction with Luxemburg's behavior: reports of other faculty members' "exasperation" over Luxemburg's "roadblocks" to coordinating faculty meetings; his general absence from campus when not teaching; and a general sense of being unavailable for faculty service except at his convenience. Luxemburg's failure to attend the Saturday engineering seminar, which is the Plaintiff's sole example of Slotta's anti-semitic attitude (other than the bare assertion that Slotta displayed "a bias against both persons of immigrant and/or non-anglo racial extraction and against persons of the Jewish religion," (Plaintiff's Second Amended Complaint, at 8) constitutes only one of several, far more serious examples of Luxemburg's unsatisfactory service. In fact, his failure to attend the Saturday workshop is the least negative of all the instances cited in the report. The report states that Luxemburg's non-attendance merely gives an "impression of disinterest," but the Plaintiff's alleged recalcitrance in scheduling meetings and his general absence from the campus give concrete, even compelling, examples of the professor's actual indifference to the needs and convenience of students and faculty alike. Thus, Plaintiff is unable to show that either his religion or his racial origin forms the basis for this report, because even in the absence of Slotta's comments on the Saturday seminar there is no reason to believe the faculty service evaluation would have been anything other than negative.

 The Plaintiff's allegation that his salary was reduced in retaliation for filing a complaint over Slotta's interference with his National Science Foundation application is even more attenuated. Luxemburg does not even specifically allege that the reduction was due to discrimination based on religion or national origin. But, even assuming a proper claim has been made, the Court finds that the Plaintiff has failed to present *any* evidence that he was discriminated against under Title VII.

Luxemburg's self-contradictory pleadings clearly indicate that from the start of his employment with TAMUG, he was aware that the University looked to him to provide one-third of his estimated salary from the proposed research funding.[2] When this funding did not materialize, Luxemburg's salary (which apparently had been fully funded by TAMUG at the specified rate of $4,555.56 a month through November 30, 1990) was reduced to reflect the new percentage of funding scheduled to take effect on December 1, 1990: 57.14% from TAMUG funds; 42.86% from Luxemburg's research funds (see Slotta's motion for summary judgment, Exhibit 5).[3]

Once again, Luxemburg has presented this Court with no evidence that even suggests his salary reduction was anything other than a cut implemented by TAMUG in accordance

---

**2.** At one point in his pleadings, the Plaintiff states that "Slotta planned, but did not so specify to Luxemburg, that 33% of the nominal remuneration to Luxemburg would be supplied by funds from research grants." Plaintiff's Second Amended Complaint, at 5. Yet only one page later, the Plaintiff admits that Slotta made clear in his August 8, 1990 letter that Luxemburg would be paid $27,333 from TUMUG funds, leaving the Plaintiff to supply the remaining $13,666 from his own research funding. *Id.* at 6. Thus, the Plaintiff was fully aware of the proposed funding scheme before his teaching duties even began.

**3.** The Plaintiff claims that the contract between TAMUG and himself unambiguously provides for a flat payment of $4,555.56 a month for nine months, but he (strangely) has not made a breach of contract claim in his pleadings. This Court, therefore, will not address Plaintiff's repeated assertion that TAMUG breached his contract.

with the terms all parties clearly understood from the beginning of the employment relationship. On January 24, 1991 Deborah Kraft, TAMUG's Controller, sent Luxemburg a memo explaining that the 42.86% of his former salary could only be disbursed from the Texas A & M University Research Foundation after Luxemburg first placed research funds in the Foundation. Luxemburg's failure to obtain such funding—for reasons that are immaterial to his Title VII claims—was the clear and obvious reason why his salary was reduced. The parties may have been mistaken in their initial assumptions about the likelihood of winning research money; miscommmunications may have taken place; and Luxemburg and Slotta no doubt treated one another with mutual contempt and hostility, but personal immaturity does not constitute grounds for a Title VII claim unless the Plaintiff can show a causal relation between the alleged discriminatory act and his religious beliefs or racial origin. This Court finds that Luxemburg has utterly failed to show *any* causal relationship, much less a "but for" causation, and holds that Plaintiff has not demonstrated his prima facie case of retaliatory discrimination by Defendant Slotta as a matter of both fact and law.

■ The Plaintiff's allegation of the same Title VII claim against Defendants Merrell and McCloy are even weaker than those against Slotta. Luxemburg's vague pleadings seem to suggest that these Defendant's are culpable for somehow "ratifying" Slotta's action. His only concrete comments on these Defendants are that McCloy, the Vice President for Academic Affairs at TAMUG, reviewed some of the Plaintiff's complaints about Slotta, rejected some, accepted others, and gave "mild recommendations" for discipline (apparently against Slotta, which is hardly evidence of an intent to discriminate against Luxemburg). (See Plaintiff's Second Amended Complaint, at 10). Dr. Merrell, the head of the Maritime Department, is said to have written a "critical letter" to the Plaintiff about his decision to withdraw his grant proposal. Id. at 11. The Plaintiff nowhere claims that these Defendants retaliated against him because of his religion or racial origin, and the Court finds that his

Title VII retaliation claims against them are without merit.

Although this Court is convinced that the Plaintiff has failed to make out a prima facie case of retaliation, its grant of summary judgment for the Defendants is not wholly dependent on this issue alone. The Court is aware that the Fifth Circuit has stated that even if a plaintiff has not established its prima facie case, summary judgment is not appropriate in employment discrimination cases if any genuine issue of material fact is raised. *Amburgey v. Corhart Refractories Corp., Inc.*, 936 F.2d 805, 811 (5th Cir.1991); *see also Thornbrough v. Columbus and Greenville R.R. Co.*, 760 F.2d 633, 641 n. 8 (5th Cir.1985). The Court therefore also addresses the second and third elements of the *McDonnell Douglas/Burdine* test, mindful that most issues of summary judgment will be decided at the third stage: whether the defendant's proffered reasons are pretextual? *See Amburgey, supra,* 936 F.2d at 811.

■ As stated before, if a plaintiff establishes a prima facie case of discrimination, the burden of *production* (not persuasion) shifts to the defendant to show a legitimate, nondiscriminatory reason for the action it took. *Burdine, supra,* 450 U.S. at 254, 101 S.Ct. at 1094. As the Supreme Court has recently made quite clear, the defendant need not convince the trier of fact that its proffered reasons were the *actual* motivations for its actions; it need only show reasons which, if taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action. *St. Mary's Honor Center, supra,* —— U.S. at ———, 113 S.Ct. at 2748–49, 125 L.Ed.2d at 417–18.

■ The Court has no difficulty in this case in concluding that the Defendants have proffered legitimate and non-discriminatory reasons for the actions taken against Luxemburg. They have provided several records indicating that the parties understood from the beginning that the Plaintiff's salary was to be funded one-third by his research grants and that any salary payments above the two-thirds commitment by TAMUG was contingent on such funding. The Court, of course, does not consider the credibility of the De-

fendant's reasons at the summary judgment stage, *id.* at ——, 113 S.Ct. at 2748, 125 L.Ed.2d at 417; it merely finds that, if taken as true, the Defendants' evidence overcomes any presumption of retaliatory discrimination.[4]

As a result, any presumption of discrimination that may remain in this case vanishes, and the Plaintiff is left with the burden of persuasion to prove that the reasons articulated by the employer are mere pretexts. *Amburgey, supra,* 936 F.2d 805, at 811. The plaintiff in a Title VII suit at all times bears the ultimate burden of persuasion and must demonstrate to the Court that the true reason for the discriminatory act was one of the unlawful Title VII bases. *St. Mary's Honor Center, supra,* —— U.S. at ——, 113 S.Ct. at 2747–48, 125 L.Ed.2d at 416. As stated above, the Plaintiff in this case has not filed a single affidavit, deposition, or any other piece of admissible evidence beyond his pleadings. There is, therefore, *no* evidence by which this Court could be persuaded that the Defendants's reasons are pretexts for its actions. Consequently, the Court finds that, even if Luxemburg has made out a prima facie case of retaliatory discrimination, summary judgment is warranted in favor of all Defendants on the Plaintiff's Title VII claims.

### IV. The § 1983 Free Speech Claims

Plaintiff Luxemburg also claims four violations of his Constitutional rights under 42 U.S.C. § 1983 by alleging that the Defendants deprived him of a liberty interest (1) to act responsibly in his profession, (2) in employment, by misleading him as to the terms of hiring, (3) in freedom to speak out on matters of public concern, and (4) in freedom from retaliation.[5] In its earlier Order to Dismiss, the Court dismissed the first claim as a novel, apparently nonsensical, cause of action, dismissed the second action because the Plaintiff failed to show how it rose to a Constitutional level, and grouped the remaining causes under a violation of the First Amendment right to free speech.

It is well established that a public employee may not be discharged, disciplined, or punished for exercising the right to free speech. *See, e.g., Rankin v. McPherson,* 483 U.S. 378, 383, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987); *Page v. DeLaune,* 837 F.2d 233, 237 (5th Cir.1988). This right, however, is not absolute. To obtain relief from this Court, a public employee must show that:

1. the speech addressed a matter of public concern;

2. the employee's interest in communicating upon matters of public concern outweighs the defendant's interest in promoting the efficiency of the public service they perform; and

3. the employee's discipline was motivated by the uttered speech.

*Thompson v. City of Starkville, Miss.,* 901 F.2d 456, 460 (5th Cir.1990).

This Court has written that the interest in having "all manner of illegal and unethical behavior exposed and punished forces the Court to conclude that only matters of national security and the like should ever prevent a public employee from revealing or generally objecting to improper public practices." *McDonald v. City of Freeport, Tex.,* 834 F.Supp. 921, 931 (S.D.Tex.1993) (Kent, J.). With this in mind, the Court has already ruled that Luxemburg's complaints about Slotta's alleged fraud on the National Science Foundation clearly satisfy the first two ele-

---

4. The Court finds it extraordinary, though not atypical in this case, that the Plaintiff's late-filed Motion for Summary Judgment actually advises this Court that the *dissent* in *St. Mary's Honor Center* has a better grasp on reality than the majority does because the majority's burden of proof is "tremendously difficult." See Plaintiff's response to Motion for Summary Judgment, Instrument # 57, at 13. Incredibly, the Plaintiff seems to urge this Court to follow the dissent, rather than the majority, in a United States Supreme Court decision, which is absolutely binding upon the Court. This Court respectfully declines such a novel invitation, although Lewis Carroll would again be proud.

5. Plaintiff's Second Amended Complaint does not specifically state the applicable law under which his claims arise, but under a liberal reading of the pleadings § 1983 is the appropriate statute for these claims.

ments of the *Thompson* test. . Order to Dismiss, Instrument # 42, at 14.

The only remaining issue is whether the Plaintiff's "discipline" was motivated by his complaint. This factor is determined according to the burden-shifting provisions of *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Under that test, the plaintiff has the initial burden of showing that his conduct was a protected activity and formed a substantial or motivating factor in the defendants' actions toward him. *Id.* at 287, 97 S.Ct. at 576. Once this is demonstrated, the burden shifts to the defendant to show by a preponderance of the evidence that it would have made the same decision or undertaken the same action in relation to the plaintiff even in the absence of the protected conduct. *Id.*

The Court is aware that "[w]hether an employee's protected conduct was a substantial or motivating factor in an employer's decision to take action against the employee is a question of fact *ordinarily* rendering summary disposition inappropriate." *Click v. Copeland*, 970 F.2d 106, 113 (5th Cir.1992) (emphasis added); *Brawner v. City of Richardson, Tex.*, 855 F.2d 187, 193 (5th Cir. 1988). This is true because in the ordinary case the parties submit documents, depositions, admissions, or the like that call on the Court to weigh the evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence.

The present case, however, is anything but ordinary in this regard; the Plaintiff has presented *no* evidence beyond his Complaint. It is axiomatic that once the moving party makes the initial showing, negating any disputed, material fact, the party opposed to the motion must offer evidence reflecting the existence of one or more genuine issues of material fact. Fed.R.Civ.P. 56(e); *Celotex, supra*, 477 U.S. at 323, 106 S.Ct. at 2553, 91 L.Ed.2d 265. The bare allegations of the pleadings will not suffice. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). As the Fifth Circuit has recently stated, the Plaintiff in an employment—retaliation case cannot rely on mere allegations; he must produce specific support for the claim that the Defendant acted with an unconstitutional motive. *Tompkins v. Vickers*, 26 F.3d 603, 608 (5th Cir.1994).

The Court finds that for reasons previously discussed in relation to the Title VII claims, the Plaintiff has shown *no* evidence that the Defendants acted with an improper motive and thus that no genuine issue of material fact exists. The Defendants' uncontested evidence unambiguously shows that from at least May 10, 1990 on, all parties in this case understood that Dr. Luxemburg's salary would be one-third funded by money he brought to TAMUG through research grants. Indeed, the Plaintiff admits as much. (See Plaintiff's Second Amended Complaint, at 5–6). The February 1, 1991 reduction of his monthly pay was merely an accounting measure taken in accordance with the September 1, 1990 Form 500R Request breakdown of Luxemburg's salary, and this reduction would have occurred whether or not Luxemburg filed complaints about Slotta's alleged fraud on the National Science Foundation. Finally, Defendant Slotta has provided uncontested statements that Milton Abelow, the Assistant to the President of TAMUG, was in charge of Luxemburg's salary payments, and that he disbursed the salary according to the agreement between Luxemburg and TAMUG without any order from Slotta to do so.

This case thus resembles a recent Fifth Circuit case in which the Plaintiff, an HIV-positive surgical assistant, claimed that he was improperly transferred to a non-surgical unit in retaliation for telling a local newspaper about his HIV status. *Bradley v. Univ. of Texas M.D. Anderson Cancer Center*, 3 F.3d 922 (5th Cir.1993). The Circuit affirmed the trial court's grant of summary judgment for the Defendant because the Plaintiff could not show that his employer would not have reached the same decision without regard to the constitutionally protected incident. *Id.* at 925. In *Bradley*, the employer's decision was based on the Plaintiff's HIV status, not his First Amendment activity; in this case, TAMUG's decision was based on unambiguous, pre-existing agree-

ments, not in retaliation for Luxemburg's constitutional right to free speech. In both cases, the employer would have reached the same decision even if the Plaintiffs had not exercised their First Amendment rights, and to grant the Plaintiff relief in such a case would place him in a better position than he otherwise would have been in for engaging in his constitutionally protected rights. *Id.*

This is not to say that Slotta (or the Plaintiff for that matter) have behaved in anything other than an exceedingly non-professional manner throughout the events leading to this miasmic case. But, outrageous behavior and personal animosity do not, *per se,* allow this Court to find a violation of § 1983. In this case particularly, it is abundantly clear that the mutual dislike between these parties, which is almost certainly the basis of many of the events the Plaintiff complains of, *preceded* the exercise of any First Amendment rights. Luxemburg alleges that Slotta assaulted him during their initial discussions about the National Science Foundation, making the incident prior to the formal complaints the Plaintiff claims were the bases for TAMUG's retaliatory action. In addition, Luxemburg complains that he was promised a two-thirds teaching load of six hours but was assigned a full load of nine hours in the fall of 1990. (See Plaintiff's Second Amended Complaint, at 7). Obviously, this assignment would have been made at the beginning of the academic semester before any of the concrete incidents making up the Plaintiff's claims even occurred.

Thus, because the Court finds that summary judgment in favor of the Defendants is warranted on the grounds stated, it does not rule on the Defendant's claim that they are entitled to qualified immunity against Plaintiff's § 1983 claims.

### V. CONCLUSION

For the reasons stated above, Plaintiff Leon Luxemburg cannot recover against any of the Defendants in this suit under either Title VII or § 1983 as stated in his Complaint. The Defendant Slotta's and Defendants Merrell's and McCloy's motions for summary judgment are both hereby **GRANTED,** and the entire action is **DIS-** **MISSED WITH PREJUDICE** as to all claims remaining in this suit following the Court's earlier Motion to Dismiss. Furthermore, all other relief not specifically granted herein is **DENIED.** All parties are to bear their own costs. If is further **ORDERED** that the parties file no further pleadings on this issue in this Court, including motions to reconsider and the like. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**