**TEXAS A & M UNIVERSITY SYSTEM, Dr. William J. Merrell, in His Official Capacity as Professor of Oceanography, Dr. William Evans, in His Official Capacity as Professor of Marine Biology, and Dr. James M. McCloy, in His Official Capacity as Department Head and Professor of Maritime Administration, Appellants,**

v.

**Leon LUXEMBURG, Appellee.**

**No. 14–00–00105–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 3, 2002.

---

See also 863 F.Supp. 412.

David S. Morales, Austin, for appellants.

Walter J. Kronzer, Houston, for appellee.

Panel consists of Justices YATES, EDELMAN, and DRAUGHN.*

## MAJORITY OPINION ON MOTION FOR REHEARING

LESLIE BROCK YATES, Justice.

We withdraw our opinion of July 11, 2002, and substitute the following opinion. A university professor sued the university and several administrators, alleging that his constitutional rights were violated in connection with the termination of his employment. Following a jury trial, the trial court entered judgment in favor of the professor, ordering the university to reinstate him to his former position and awarding him back pay, attorney's fees, and costs. The university and administrators appealed. We affirm in part and reverse and render in part.

### I. FACTUAL BACKGROUND

In 1989, Leon Luxemburg was hired as a part-time instructor in the Maritime College of Texas A & M University at Galveston ("TAMUG"). In 1990, Luxemburg began discussing a possible tenure-track position with Larry Slotta, the Director of Engineering Programs at TAMUG. In two separate letters from Slotta to Luxemburg, Slotta outlined their discussions about the terms of Luxemburg's employment. Both letters indicated that Luxemburg would receive a nine-month salary of $41,000, two-thirds of which would be funded by TAMUG, with the remaining one-third to be provided by Luxemburg's research funds. On August 24, 1990, Luxemburg acknowledged receipt of the "Terms and Conditions of Faculty Appointment," notifying Luxemburg of his appointment as a non-tenured assistant professor for a nine-month period from September 1, 1990, to May 31, 1991. Under "Salary," this document had a typewritten notation of "($4,555.56 mo)," which equates to $41,000 over nine months; however, the document does not mention the previously discussed division of the sources for Luxemburg's salary. Luxemburg claims he understood this to mean that his monthly salary was, in fact, guaranteed. On September 1, Slotta submitted to his superiors a form budget request for funding of Luxemburg's salary of $4,555.56 per month. According to this form, TAMUG would pay 100% of Luxemburg's salary through the end of November, at which time TAMUG's contribution would drop to 57.14% and a separate account, consisting of research funds acquired by Luxemburg, would provide the other 42.86%.

Luxemburg and Slotta began having severe personal conflicts almost immediately

* Senior Justice Joe L. Draughn sitting by assignment.

after the school year started. In November 1990, Luxemburg submitted his first research proposal for Slotta's approval. According to Luxemburg, after Luxemburg signed the proposal, Slotta altered portions to overstate costs and falsely claim participation by minority students before submitting the proposal to the National Science Foundation ("NSF"). Luxemburg submitted a written grievance to William Evans, Dean of TAMUG's Maritime College, accusing Slotta of fraud. Luxemburg also alleged that Slotta physically assaulted him and subjected him to public humiliation.

In January 1991, Luxemburg received two memos from TAMUG's controller indicating that, because Luxemburg had not yet contributed any research funds, he should not have received the 42.86% of his December salary that was to be contributed from such funds. Accordingly, Luxemburg was informed that his paycheck for January would be reduced to reflect this overpayment, and that all later checks would only be for 57.14% of his monthly salary until he had supplied the necessary research funds. Luxemburg claims this "pay cut" was in fact retaliation for his grievance against Slotta.

On April 8, 1991, Luxemburg submitted a written grievance to Dr. James McCloy, TAMUG's Vice President for Academic Affairs, accusing Evans of suppressing evidence of Slotta's misconduct, refusing to act on Luxemburg's complaints, and intimidating Luxemburg to prevent him from complaining. Around this same time, Luxemburg sent a note to NSF requesting removal of his name from the November proposal. This note stated that Slotta added "fraudulent statements" as well as "incompetent statements" to the proposal without Luxemburg's consent. On April 10, William Merrell, TAMUG's President, sent Luxemburg a memo urging Luxemburg to follow university procedures for withdrawing his name from the proposal and criticizing his actions as a "serious breach of proper professional conduct." In an April 16 memo to Merrell, Luxemburg accused him of interfering with the grievance procedure and requested that Merrell's charges of professional misconduct be resolved as part of that procedure.

On May 8, 1991, Luxemburg was notified that his appointment had been renewed for the 1991–92 school year. On May 10, McCloy issued his findings and recommendations with respect to Luxemburg's grievances. Luxemburg informed Merrell that he disagreed with McCloy's conclusions and requested a meeting of the Tenure Advisory Committee to review his grievances, along with an additional complaint against McCloy for advising Evans not to take action against Slotta for the alleged physical assault. The Tenure Advisory Committee issued its conclusions, and Merrell ultimately instructed McCloy to issue reprimands to Slotta and Evans.

In January 1992, TAMUG merged with Texas A & M University at College Station and became part of the Texas A & M University System ("Texas A & M"). Merrell's position as President was eliminated, and David Schmidley was appointed Campus Dean and Chief Executive Officer of TAMUG. During both the 1991–92 and 1992–93 school years, Luxemburg continued working as an assistant professor, and his salary was funded 100% by TAMUG.

In May 1993, McCloy and Luxemburg's department head, Ted Chang, both recommended to Schmidley that Luxemburg's contract should not be renewed. On May 28, 1993, Schmidley sent Luxemburg an official notice of non-reappointment, informing Luxemburg that his appointment as assistant professor would not continue after May 31, 1994. Although Luxemburg was paid his full salary for the 1993–94

school year, his duties no longer included teaching students at TAMUG.

## II. PROCEDURAL BACKGROUND

### A. The Federal Suit

In November 1992, while still employed at TAMUG, Luxemburg filed suit in federal court alleging retaliation based on his opposition to unlawful employment practices and deprivation of his rights under the United States Constitution. Luxemburg named Texas A & M as a defendant, along with Slotta, Merrell, Evans, and McCloy, in both their individual and official capacities. Luxemburg amended his complaint in May 1993 to add state constitutional violations and claims for discrimination based on religion, race, and national origin. In December 1993, the court dismissed all claims against the defendants in their official capacities, as well as Luxemburg's constitutional due-process claim. In September 1994, the court granted the defendants' motion for summary judgment, dismissed Luxemburg's remaining claims, and entered a final judgment, which was affirmed by the Fifth Circuit without opinion. *See Luxemburg v. Texas A & M Univ. Sys.*, 863 F.Supp. 412 (S.D.Tex. 1994), *aff'd mem.*, 59 F.3d 1240 (5th Cir. 1995).

### B. The State Suit

On February 22, 1994, while his federal suit was still pending, Luxemburg filed a second suit in state court, alleging retaliation and deprivation of his rights under both the United States and Texas Constitutions. Luxemburg's state suit named the same five defendants as in federal court, plus Schmidley. Again, each individually named defendant was sued in both his individual and official capacities. Lux-

emburg's only requested relief was monetary damages. In September 1997, the trial court granted a partial summary judgment for appellants, leaving only "state claims against Texas A & M" in the suit. The trial court set the case for trial on February 22, 1999. On January 28, 1999, Texas A & M filed a plea to the jurisdiction, alleging (1) Luxemburg's contract claims are barred by sovereign immunity and (2) there is no recognized cause of action for damages to enforce state constitutional rights. One week later, Luxemburg filed an agreed motion for continuance. The trial court granted the continuance and re-set trial for June 1, 1999.

On March 8, 1999, Luxemburg filed an amended petition in which he abandoned his claims for monetary damages and sought declaratory and equitable relief, as well as attorney's fees, against Texas A & M and Slotta, Merrell, McCloy, Evans, and Schmidley in their official capacities only. Luxemburg proceeded to trial against Texas A & M, Merrell, McCloy, and Evans.[1] The jury found (1) Luxemburg had a property interest in his employment, (2) Luxemburg was denied procedural due course of law when his employment ceased, (3) Luxemburg was denied substantive due course of law when his employment ceased, (4) appellants' conduct was a proximate cause of Luxemburg being deprived of a protected liberty interest, and (5) Luxemburg's protected speech was a substantial or motivating factor for the employment actions taken against him. Following several post-trial motions, the court ultimately entered an amended final judgment in which the court (1) awarded Luxemburg $275,000 in back salary and attendant benefits, $120,000 in attorney's fees, and $2,500 in costs; (2) ordered Tex-

---

1. Slotta was never served in the state suit, and although the record is not clear, Schmid- ley was apparently non-suited before trial. Neither is a party to this appeal.

as A & M to reinstate Luxemburg to his former position or a comparable position "as if he ... had not been suspended and/or terminated"; and (3) restrained Texas A & M from directly or indirectly violating Luxemburg's constitutional rights by wrongfully interfering with Luxemburg's performance of his duties, although the court stated that Texas A & M retains the right to instruct and supervise Luxemburg in a reasonable manner and may discipline, suspend, non-renew, or terminate Luxemburg for lawful reasons or just cause and if lawful procedures are followed. This appeal followed.

## III. Discussion

### A. Res Judicata

■ In their second issue, appellants contend the claims submitted to the jury are barred by the doctrine of res judicata, or claim preclusion. Because the first lawsuit was decided in federal court, federal law controls the determination of whether res judicata bars the present state court proceeding. *San Antonio Sch. Dist. v. McKinney,* 936 S.W.2d 279, 281 (Tex. 1996). Under federal law, the doctrine of res judicata will apply if

(1) the parties in both suits are identical,

(2) the prior judgment was rendered by a court of competent jurisdiction,

(3) there is a final judgment on the merits, and

(4) the same cause of action is involved in both cases.

*Id.* Even if these four requirements are established, however, res judicata will not apply if the federal court (1) lacked jurisdiction over the state court claims or (2) possessed jurisdiction over those claims but would clearly have declined to exercise that jurisdiction as a matter of discretion. *Id.*

■ Unless expressly waived, the Eleventh Amendment prevents the federal courts from exercising jurisdiction over claims against a state or a state agency. *See, e.g., Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 99–100, 104 S.Ct. 900, 907–08, 79 L.Ed.2d 67 (1984). This protection extends to officials of a qualifying state agency who are sued in their official capacities. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). In his state-court pleadings, Luxemburg alleged that appellants violated the Texas Constitution by (1) depriving him of "protected liberty interests and property interests without due course of law" and (2) retaliating against him for "having exercised his constitutionally protected rights." In the federal district court, appellants successfully argued that, with the exception of Luxemburg's discrimination claims arising under Title VII, the federal court did not have jurisdiction over claims against Texas A & M and the individual defendants in their official capacities. Because the federal court lacked jurisdiction over Luxemburg's claims in the present suit, we must conclude that res judicata does not apply. *McKinney,* 936 S.W.2d at 281. Appellants' second issue is overruled.

### B. Collateral Estoppel

■ Appellants also argue that the doctrine of collateral estoppel, or issue preclusion, bars Luxemburg's claims. Defensive collateral estoppel may be used to prevent relitigation by a plaintiff of issues previously lost in another proceeding. *See Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 519 (Tex. 1998). Because Luxemburg was a party in both proceedings, the critical issues concern whether (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action and

(2) those facts were essential to the judgment in the first action. *Id.*

### 1. The First Lawsuit

We must review the issues decided in the federal court to determine whether those findings preclude Luxemburg's claims in the state court. In his Second Amended Complaint in federal court, Luxemburg asserted claims for (1) misrepresentation, (2) false-light invasion of privacy, (3) "[d]eprivation of liberty interest[s]," (4) violation of the Texas Whistleblower Act, and (5) discrimination based on race, national origin, and religion. Luxemburg identified in his complaint the following four liberty interests of which he was allegedly deprived: (1) "freedom to act responsibly in his profession," (2) his employment, (3) "freedom to speak out on matters of general concern," and (4) "freedom from retaliation." The federal court treated these claims collectively as claims under 42 U.S.C. § 1983 for deprivation of rights under the First and Fourteenth Amendments to the United States Constitution. *See* 42 U.S.C. § 1983 (1994).

As noted above, the federal court dismissed for lack of jurisdiction all claims against Texas A & M and the individual defendants in their official capacities except for Luxemburg's discrimination claims. The individual defendants also sought to dismiss Luxemburg's § 1983 claims on the basis of qualified immunity. The federal court first examined Luxemburg's free-speech-deprivation claim and concluded that Luxemburg had pleaded sufficient facts to raise a § 1983 claim against Slotta, Merrell, and McCloy. Turning to Luxemburg's claims under the Fourteenth Amendment, the court initially noted that "Luxemburg's complaint nowhere claims that he has been denied *procedural* due process." With respect to his substantive-due-process claims, the federal court concluded the facts Luxemburg alleged in his complaint as stigmatizing were insufficient as a matter of law to support a § 1983 claim, and that Luxemburg did not otherwise establish the deprivation of a recognized liberty interest. Accordingly, the court granted the individual defendants' motion to dismiss Luxemburg's Fourteenth Amendment § 1983 claims. Thus, Luxemburg's only remaining claims were (1) his § 1983 claim based on his First Amendment right to free speech, (2) his discrimination claims under Title VII, and (3) his state-law claims.

Luxemburg voluntarily dismissed his state-law claims, and the individual defendants moved for summary judgment on the two remaining federal claims. With respect to his discrimination claims, the federal court concluded that Luxemburg failed to make a prima facie case of retaliatory discrimination. In reaching this conclusion, the court interpreted Luxemburg's complaint as alleging two acts of discrimination: Slotta's negative evaluation of Luxemburg for failing to attend a function on a Saturday, when Luxemburg was observing the Jewish Sabbath; and the reduction in Luxemburg's pay during the 1990–91 school year. On the § 1983 claim, the district court found that Luxemburg "has shown no evidence that the Defendants acted with an improper motive and thus that no genuine issue of material fact exists." *Luxemburg,* 863 F.Supp. at 422. Again, however, the court's analysis of the defendants' summary judgment evidence focused on Luxemburg's claim that his salary had been reduced in retaliation for his protected speech. The court concluded that "TAMUG's decision was based on unambiguous, pre-existing agreements, not in retaliation for Luxemburg's constitutional right to free speech." *Id.* at 422–23.

### 2. The Second Lawsuit

In the present case, Luxemburg presented to the jury constitutional claims

based on (1) denial of due course of law and (2) retaliation against protected speech. Appellants contend that these issues were fully and fairly litigated in Luxemburg's first suit.

We first consider whether Luxemburg should be estopped from raising his due-course claim. *See* Tex. Const. art. I, § 19.[2] Due course of law exists to prevent the State from depriving persons of liberty and property without notice and hearing. *Skelton v. Commission for Lawyer Discipline*, 56 S.W.3d 687, 693 (Tex. App.-Houston [14th Dist.] 2001, no pet.). The first three questions in the jury charge asked whether Luxemburg had a property interest in his employment with TAMUG and whether he was denied procedural and substantive due course of law when his employment ceased. Appellants contend these factual issues were fully and fairly litigated in Luxemburg's first lawsuit. In that first suit, however, Luxemburg did not assert any constitutional violations stemming from the loss of his employment. Luxemburg's only claims relating to his employment in the federal case concerned Slotta's negative evaluation and the alleged reduction in his salary. In its order dismissing Luxemburg's claims in part, the court specifically stated that Luxemburg's complaint "does not allege ... that Luxemburg possesses a property interest in his job." Thus, the federal court did not address whether Luxemburg had a constitutionally protected property interest in his continued employment or whether Texas A & M deprived Luxemburg of due course of law when it decided not to renew his employment. Therefore, Luxemburg was not estopped from litigating these issues in the second lawsuit.

Question number 4 in the jury charge addresses the alleged deprivation of a protected liberty interest by the publication of stigmatizing charges against Luxemburg. A comparison of Luxemburg's complaint in the federal lawsuit and his petition in the state lawsuit reveals that the allegedly stigmatizing charges are the same in both. In the federal suit, the district court found that Luxemburg's alleged facts were insufficient to establish a constitutional violation because he failed to establish that the accusations against him were made under the color of the accusers' official duties. However, even when the allegedly stigmatizing charges are not themselves made by a governmental entity, an individual's liberty interest may be affected if a state employee is terminated based on those charges. *See Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972) (concluding that a state's decision not to rehire a non-tenured professor, without more, did not implicate any liberty interest, but stating that a "different case" would be presented if the state had "base[d] the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality"). As we note above, Texas A & M's decision not to reappoint Luxemburg after the 1993–94 school year was apparently never an issue in the federal lawsuit. Accordingly, the federal court never addressed whether Texas A & M's nonrenewal decision was related to the alleged stigmatizing charges or whether Luxemburg was deprived of a liberty interest by being refused a name-clearing hearing. We conclude Luxem-

---

**2.** The Texas due-course clause is nearly identical to the federal due-process clause found in the United States Constitution. *University of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929 (Tex.1995); *see* U.S. Const. amend. XIV.

Although the federal version refers to "due process" rather than "due course," our supreme court has stated that these two terms have no meaningful distinction. *See Than*, 901 S.W.2d at 929.

burg was not estopped from presenting these issues to the jury.

■ Next, we review whether Luxemburg should have been precluded from bringing his free-speech claim. *See* TEX. CONST. art. I, § 8. In Question 5, the jury was asked whether Luxemburg's protected speech "was a substantial or motivating factor for the employment actions taken against him." Nowhere does the charge specify the "employment actions" to which this question refers. Luxemburg asserts that the "employment actions" include his nonrenewal by TAMUG and that the federal court never addressed the factual issue of whether he was terminated in retaliation for exercising his right to protected speech. Appellants respond that Luxemburg's pleadings in the state suit do not allege termination as an "employment action" taken against him, and thus Luxemburg's claims were identical in both suits. Although the recitation of facts in Luxemburg's petition does not mention his termination, under the heading "Equitable Relief," Luxemburg states that he "seeks reinstatement to his former position." Furthermore, Luxemburg's termination is clearly an issue with respect to other questions in the jury charge. As used in Question 5, "employment actions" could reasonably be interpreted to include the decision not to renew Luxemburg's appointment. Because appellants did not object to this language, and because the federal court did not address whether Luxemburg's employment was improperly terminated in violation of his right to free speech, we conclude that Luxemburg was not estopped from raising this issue in his state lawsuit.

None of the jury issues presented in Luxemburg's second lawsuit were barred by the doctrine of collateral estoppel. We overrule appellants' first issue.

## C. Statute of Limitations

■ In their third issue, appellants argue that Luxemburg's claims are barred by the statute of limitations. The statute of limitations for an alleged constitutional violation is two years. *See Jackson v. Houston Indep. Sch. Dist.*, 994 S.W.2d 396, 402 (Tex.App.-Houston [14th Dist.] 1999, no pet.); TEX. CIV. PRAC. & REM.CODE ANN. § 16.003(a) (Vernon Supp.2002). According to appellants, Luxemburg's cause of action accrued no later than June 2, 1993, the date he allegedly received notice that he would not be reappointed. Luxemburg filed his original petition on February 22, 1994, well within the limitations period. However, Luxemburg did not assert a claim in equity for reinstatement until he filed an amended petition on March 5, 1999. Thus, appellants contend Luxemburg's equitable claim is barred by limitations.

■ Luxemburg responds that his amended pleading is entitled to the filing date of his original petition under section 16.068 of the Texas Civil Practice and Remedies Code, which provides as follows:

> If a filed pleading relates to a cause of action . . . that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.

TEX. CIV. PRAC. & REM.CODE ANN. § 16.068 (Vernon 1997). We apply a two-pronged test to determine whether an amended pleading relates back to an earlier pleading for purposes of applying limitations. *Cooke v. Maxam Tool & Supply, Inc.*, 854 S.W.2d 136, 141 (Tex.App.-Houston [14th Dist.] 1993, writ denied). First, the origi-

nal cause of action asserted in the first pleading must not have been time-barred when filed; and second, the amended pleading which changes the grounds of liability must not be wholly based on a new, distinct, or different transaction or occurrence. *Id.* Luxemburg's amended petition easily satisfies both prongs of this test, and thus is not subject to a plea of limitation. Appellants' third issue is overruled.

### D. Sufficiency of the Evidence

In their fifth issue, appellants contend there is insufficient evidence to support the jury's verdict. With respect to Luxemburg's due-course-of-law claim, appellants argue (1) there is no evidence that Luxemburg had an objectively reasonable expectation of continued employment, (2) there is no evidence that appellants made any false, public, or stigmatizing charges against Luxemburg, and (3) there is no evidence that Luxemburg requested a hearing to clear his name and that such hearing was denied him. On his free-speech claim, appellants contend the evidence conclusively establishes that the decision not to renew Luxemburg's employment contract was made independently of any protected speech from Luxemburg.

 We review each of these complaints as an attack on the legal sufficiency of the evidence. A legal-sufficiency point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of a vital fact. *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex. 1997). We must view the evidence in a light that tends to support the jury's find-

ing and disregard all evidence and inferences to the contrary. *Bradford v. Vento,* 48 S.W.3d 749, 754 (Tex.2001). Because none of the parties objected to the jury charge, we review the sufficiency of the evidence in light of the charge submitted. *Id.* If the record contains any evidence of probative force to support the jury's finding, the legal-sufficiency challenge must be overruled. *ACS Investors, Inc. v. McLaughlin,* 943 S.W.2d 426, 430 (Tex. 1997).

 Appellants contend there is no evidence that Luxemburg had an objectively reasonable expectation of continued employment at TAMUG, and therefore, Luxemburg presented no evidence of a constitutionally protected property interest. We agree. To show that he had a property interest in his employment, Luxemburg was required to prove that he had a legitimate claim of entitlement to continued employment, and not just a unilateral expectation. *See Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. The record shows that for each school year he worked as a tenure-track assistant professor, Luxemburg was appointed to a specific nine-month term beginning in September and ending in May. Luxemburg testified that, as he perceived them, the rules of Texas A & M required a hearing before he could be removed from the tenure track. However, this subjective testimony does not rise above the level of a unilateral and unreasonable expectation of continued employment. The only other evidence uncovered from our review of the record is that, upon hearing that Slotta had suggested terminating Luxemburg after only one semester, McCloy rejected this suggestion as premature.

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that Luxemburg has presented no more than a mere scintilla of evidence that he

had an objectively reasonable expectation of continued employment with TAMUG. Accordingly, the evidence is legally insufficient to support the jury's response to Question 1. Because Questions 2 and 3 were conditioned on an affirmative answer to Question 1, we find the evidence legally insufficient to support the jury's answers to those questions as well.

■ We also conclude the evidence was legally insufficient to support the jury's answer to Question 4. According to the jury charge, Luxemburg was required to prove that he requested a hearing to clear his name against the allegedly stigmatizing charges, and that "no such hearing was held in connection with the employment actions taken against him." With respect to Texas A & M's decision not to reappoint him for the 1994–95 school year, Luxemburg presented no evidence whatsoever that he ever requested a hearing to clear his name or for any other reason. While Luxemburg did file grievances and request hearings relating to numerous alleged acts by Slotta, Evans, and McCloy during the 1990–91 school year, Luxemburg concedes in his pleadings that those grievances were heard by McCloy and later appealed to the Tenure Advisory Committee. Therefore, we conclude that Luxemburg has presented no evidence that he requested a name-clearing hearing or that any request for such a hearing was refused.

■ With respect to Luxemburg's free-speech claim, appellants argue that the evidence establishes as a matter of law

that the decision not to reappoint Luxemburg was made independently of Luxemburg's protected speech. To support this claim, appellants cite only the testimony of TAMUG's CEO, David Schmidley, who ultimately made the decision not to reappoint Luxemburg for the 1994–95 school year. Schmidley only stated in general terms that whether or not a professor has filed a grievance would make no difference to his renewal decision. We cannot say that this testimony conclusively establishes that the decision not to reappoint Luxemburg was wholly independent of his allegedly protected speech.

■ Appellants also claim Luxemburg failed to present legally sufficient evidence of a causal connection between his speech and the decision not to renew his appointment. In response to Question 5, the jury found that Luxemburg's protected speech was a substantial or motivating factor for the adverse employment actions taken against him.[3] Neither party objected to the submission of this question; therefore, we review the sufficiency of the evidence in light of the charge submitted. *Bradford*, 48 S.W.3d at 754.

■ Although Question 5 specifically asks whether Luxemburg's conduct was "a substantial or motivating factor" for appellants' employment actions, appellants argue that the accompanying instruction defined "substantial or motivating factor" in such a way that the jury was required to find that appellants' actions would not have occurred but for Luxemburg's griev-

---

**3.** Question 5 and the accompanying instruction are as follows:

Do you find that Leon Luxemburg has shown by a preponderance of the evidence that his protected speech was a substantial or motivating factor for the employment actions taken against him by Defendant(s)?

A substantial or motivating factor need not be the only reason for the action(s) taken, if any. There may be more than one

reason for the employment actions taken against Dr. Luxemburg. If you find that those actions, if any, would not have occurred but for Dr. Luxemburg's allegations of fraud and cover-up regarding the National Science Foundation proposal and/or allegations of discrimination, then you will find that Dr. Luxemburg's statements were a substantial or motivating factor in the employment actions taken against him.

ances and allegations.[4] We disagree. The court's instruction merely states that if Luxemburg's protected speech is a but-for cause of appellants' actions, it necessarily is also a substantial or motivating factor for those actions. We do not read this instruction as requiring the jury to find but-for causation before answering "yes" to Question 5. If the court had so intended, it could have included an instruction to that effect. For example, in criminal cases (where it appears this form of instruction is still in common use), an instruction that "If you find X, then you will find the defendant guilty" is frequently followed by a separate instruction that "Unless you find X, you will acquit." *See, e.g., Solomon v. State,* 49 S.W.3d 356, 367–68 (Tex.Crim. App.2001); *Planter v. State,* 9 S.W.3d 156, 157–58 n. 2 (Tex.Crim.App.1999); *State v. Sauceda,* 980 S.W.2d 642, 644 (Tex.Crim. App.1998). In the alternative, the court could have worded the question itself in a way that clearly required a finding of but-for causation, without reference to another causation standard. Because the instruction did not clearly and completely alter the causation standard set forth in the question, we review the evidence to determine whether there was legally sufficient evidence that Luxemburg's conduct was a substantial or motivating factor for appellants' employment actions. *See Hyundai Motor Co. v. Rodriguez,* 995 S.W.2d 661, 664 (Tex.1999) ("The goal of the charge is to submit to the jury the issues for decision logically, simply, clearly, fairly, correctly, and completely.").

 The causal link between Luxemburg's protected speech and the adverse employment action can be established by circumstantial evidence. *See City of Fort Worth v. Zimlich,* 29 S.W.3d 62, 69 (Tex. 2000). Such evidence includes, among other things, knowledge of the protected speech by a decision maker. *See id.* Schmidley testified he "reviewed all of Dr. Luxemburg's file" and the decision not to reappoint him was based on "all the material we had." Schmidley was undeniably aware of Luxemburg's previous complaints and grievances. Additionally, Luxemburg testified that while his grievances were pending, Evans, who was then Dean of the Maritime College, told Luxemburg he would lose his job if he continued to complain. Luxemburg later informed McCloy, whom Evans reported to, that Evans was trying to "intimidate" Luxemburg to keep him from complaining. Although Evans was not directly involved in making the decision not to reappoint Luxemburg, McCloy was. We conclude the record contains legally sufficient evidence to support the jury's answer to Question 5.

In summary, we find there is not sufficient evidence to support the jury's findings on Luxemburg's due-course claim, but the record contains legally sufficient evidence to support the jury's finding on Luxemburg's free-speech claim. Accordingly, we sustain appellants' fifth issue as to the first four questions in the jury charge, and we overrule appellants' complaint as to Question 5.

### E. Declaratory Relief

 Appellants urge in their fourth issue that Luxemburg is not entitled to

---

4. The Texas Supreme Court has rejected the use of a "substantial reason" causation standard in certain employment-discrimination cases in favor of a standard by which the employee must prove the employer's prohibited action would not have occurred when it did in the absence of the employee's protected conduct. *See Tex. Dep't of Human Servs. v.*

*Hinds,* 904 S.W.2d 629, 635–36 (Tex.1995); *but see Quantum Chem. Corp. v. Toennies,* 47 S.W.3d 473, 480 (Tex.2001) (concluding that "a motivating factor" is the correct causation standard for unlawful-employment-practice claims under the Texas Commission on Human Rights Act).

relief under the Uniform Declaratory Judgments Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a) (Vernon 1997). In his amended petition, Luxemburg sought, among other things, "declaratory relief whereby in each of the acts of the Defendant(s) would be declared to have been the acts of a policymaker or acts ratified by a policymaker, all in violation of the Constitution of the State of Texas." In its motion for entry of judgment, Luxemburg requested the court to make certain declarations "and enter same as declaratory judgments against defendants." The "declarations" requested by Luxemburg were nothing more than findings necessary to support his claims for violations of the Texas Constitution. Thus, Luxemburg was not entitled to seek relief under the Declaratory Judgments Act. *See Tucker v. Graham,* 878 S.W.2d 681, 683 (Tex.App.-Eastland 1994, no writ) ("A declaratory judgment action is not appropriate where plaintiff's cause of action is mature and enforceable in a pending suit that involves the same parties and the same issues as alleged in the declaratory judgment action.").

Reviewing the court's judgment, however, we see no indication that the court awarded Luxemburg any declaratory relief. Therefore, appellants' fourth issue is moot.

### F. Monetary Awards

In issues six through eight, appellants challenge the awards for back pay, attorney's fees, and costs contained in the amended final judgment. Appellants claim (1) the trial court lacked discretion to award any monetary relief, whether as damages, attorney's fees, or costs, for a violation of the Texas Constitution; (2) attorney's fees and costs were improperly awarded under the Uniform Declaratory Judgments Act; and (3) Luxemburg did not present sufficient evidence to support his attorney's-fees award.

### ·1. Back Pay

■ Among other things, the amended final judgment awarded Luxemburg $275,000 in "back salary and attendant benefits." Appellants argue this constitutes an impermissible award of damages for a violation of Luxemburg's rights under the state constitution. We agree. In *City of Beaumont v. Bouillion,* the Texas Supreme Court held that there is no right of action for damages arising under the free-speech provision of the Texas Constitution. 896 S.W.2d 143, 147 (Tex.1995). This court, as well as others, has concluded that the holding in *Bouillion* applies to violations of other provisions in the Texas Constitution as well, including a plaintiff's right to due course of law. *See Jackson,* 994 S.W.2d at 400–01. In *Jackson,* we further found that an employee's request for back pay constituted a claim for damages, and thus was not recoverable under the Texas Constitution. *Id.* at 401. Luxemburg has presented no persuasive reason for us to depart from this holding. Accordingly, we conclude the trial court erred in awarding back pay to Luxemburg.

### 2. Attorney's Fees

■ The trial court's judgment also awarded Luxemburg attorney's fees in the amount of $120,000. Appellants contend that the award of attorney's fees is an improper use of the Uniform Declaratory Judgments Act. As we set forth above, Luxemburg's declaratory judgment action requested no greater or different relief than his claim for equitable relief. Therefore, Luxemburg had no legal right to recover his attorney's fees under the Uniform Declaratory Judgments Act. *See University of Tex. v. Ables,* 914 S.W.2d 712, 717 (Tex.App.-Austin 1996, no writ). Lux-

emburg has identified no other ground on which he might be entitled to recover his attorney's fees. *See Travelers Indem. Co. of Conn. v. Mayfield,* 923 S.W.2d 590, 593 (Tex.1996) ("In Texas, attorney's fees may not be recovered from an opposing party unless such recovery is provided for by statute or by contract between the parties."). Accordingly, we conclude the trial court erred in awarding attorney's fees to Luxemburg.[5]

### 3. Costs

■ Appellants also challenge the trial court's award of $2,500 in court costs. Texas Rule of Civil Procedure 131 provides, "The successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided." TEX.R. CIV. P. 131. Luxemburg was the successful party in the lawsuit below. Luxemburg is thus entitled to recover his court costs.

Appellants suggest that *Bouillion* precludes Luxemburg from recovering any monetary award whatsoever, including costs. We do not read *Bouillion's* prohibition against a claim for damages so broadly as to limit a litigant's otherwise valid right to recover his or her costs. We find the trial court did not err in awarding Luxemburg his costs.

### G. Injunctive Relief

■ Finally, in their ninth issue, appellants argue that the amended final judgment did not meet the minimum requirements of an order granting injunctive relief. *See* TEX.R. CIV. P. 683. Specifically, appellants complain that the paragraph in the court's judgment ordering Luxemburg to be reinstated does not describe in sufficient detail the acts sought to be enjoined.[6] The paragraph in question states:

> Defendant Texas A & M University System, and its officers, agents, and employees as successors in interest to Defendants, are hereby ORDERED to reinstate Plaintiff to the position formerly held by him when terminated or to a comparable position as if he, Plaintiff had not been suspended and/or terminated. Defendant is hereby ORDERED to reinstate Plaintiff to a non-tenured, tenure-accruing or comparable position, within fourteen (14) days of the signing of this judgment.

Appellants claim that this language leaves the injunctive relief "subject to Luxemburg's own subjective belief regarding which position he formerly held, and how long his original term of appointment was." We disagree. Assuming, as both parties do, that a judgment ordering reinstatement is subject to Rule 683, we believe the court's order describes in reasonable detail the acts ordered—that Texas A & M is to reinstate Luxemburg to the position he held when terminated or a comparable position. While the court's use of the phrase "comparable position" may be subject to some interpretation, this is intended solely to give Texas A & M some flexibility in conforming to the court's order. Contrary to appellants' contention, we do not find that enforcement of the court's order in any way relies on Luxemburg's subjective belief concerning "the position formerly held by him when terminated." We overrule appellants' ninth issue.

---

5. Based on this finding, we need not address appellants' eighth issue, complaining that Luxemburg failed to submit competent evidence supporting the amount of attorney's fees.

6. Appellants raise no complaint regarding the use of reinstatement as a remedy for a violation of the Texas Constitution's free-speech provision. Accordingly, we express no opinion regarding the availability of such relief.

## IV. CONCLUSION

Luxemburg's claims were not precluded by the doctrines of res judicata or collateral estoppel, nor was his request for equitable relief barred by limitations. We find there was legally sufficient evidence to support the jury's finding that appellants took action against Luxemburg in violation of his constitutional right to free speech, although we find the evidence was insufficient to support the jury's findings regarding Luxemburg's due-course claims. Accordingly, we reverse that portion of the trial court's judgment entering judgment against appellants on Luxemburg's due-course claims. Additionally, the trial court erred in awarding "back salary and attendant benefits" and attorney's fees to Luxemburg, and we modify the trial court's judgment to delete those awards. The remainder of the trial court's judgment, as modified, is affirmed.

EDELMAN, J. dissenting.

RICHARD H. EDELMAN, Justice, dissenting on motion for rehearing.

I agree with the majority opinion except in overruling the State's challenge to the sufficiency of the evidence to prove a causal connection between Luxemburg's speech and the decision not to renew his appointment. The majority opinion correctly recites, and the parties all agree, that we review the sufficiency of the evidence in light of the charge submitted, the relevant portion of which was set forth in question 5 and its accompanying instruction (the "instruction"):

> Do you find that Leon Luxemburg has shown by a preponderance of the evidence that his protected speech was a substantial or motivating factor for the employment actions taken against him by Defendant(s)?
>
> A substantial or motivating factor need not be the only reason for the action(s) taken, if any. There may be more than one reason for the employment actions taken against Dr. Luxemburg. *If you find that those actions, if any, would not have occurred but for Dr. Luxemburg's allegations* of fraud and cover-up regarding the National Science Foundation proposal and/or allegations of discrimination, *then you will find that Dr. Luxemburg's statements were a substantial or motivating factor in the employment actions taken against him.*

Whether this question and instruction are correct according to *Hinds*[1] is of no consequence here since we are not reviewing the submission for charge error. Similarly, regardless of what meaning the term "substantial or motivating factor" may have in the case law, its only meaning to the jury and our sufficiency review is that provided in the instruction, if any. Therefore, our task is simply to discern the causation standard set forth in the instruction and then assess whether the evidence was sufficient to prove it.

The third sentence of the instruction instructs the jury to find causation if it determines that the employment action would not have occurred but for Luxemburg's allegations. But what does this sentence mean if the jury does not find such a but-for connection? The majority opinion concludes that it does not *require* a but-for connection, but apparently only includes it illustratively as something (but not the only thing) that would constitute a substantial or motivating factor. If the majority is correct that the third sentence does not require a but-for standard, then:

1. See *Tex. Dep't of Human Servs. v. Hinds,* 904 S.W.2d 629, 637 (Tex.1995) (holding that correct causation standard is whether employer's action would not have occurred when it did had the employee's protected communication not been made).

(1) that sentence is merely advisory; (2) the instruction fails to define, or thereby limit the scope of, the appropriate causation standard [2]; (3) the jury was authorized to decide the undefined "substantial or motivating factor" causation requirement according to whatever standard it chose (or none at all); and (4) there is no definition of "substantial or motivating factor" by which a sufficiency review can be conducted in this case.

Although I agree that the instruction was poorly phrased, I do not read it as loosely as the majority. Rather, I believe the "If you find ..., then you will find...." language is tantamount to saying, "If you do not find ..., then you will not find...." and, accordingly, that the third sentence of the instruction required a but-for standard of causation. Moreover, because I do not believe that the evidence identified in the majority opinion is sufficient to satisfy a but-for standard, I would sustain the State's challenge to the sufficiency of the evidence to prove causation.

---

**2.** Nor do the first two sentences of the instruction resolve the issue because they are consistent with either a but-for or a less than but-for standard. *See Hinds,* 904 S.W.2d at 633–36 (distinguishing between sole cause standard and but-for standard adopted).