NO. 07-07-0403-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JUNE 18, 2008

______________________________


JAMES MILTON ROBERTS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE


_________________________________

FROM THE 410TH DISTRICT COURT OF MONTGOMERY COUNTY;

NO. 07-07-07649-CR; HONORABLE K. MICHAEL MAYES, JUDGE

_______________________________

Before CAMPBELL and HANCOCK and PIRTLE, JJ.
ORDER DIRECTING TRANSFER OF EXHIBIT
Â Â Â Â Â Â Â Â Â Â Following pleas of not guilty, Appellant, James Milton Roberts, was convicted of two
counts of aggravated sexual assault of a child, enhanced. Punishment was assessed at
concurrent life sentences. By Order of the Texas Supreme Court, his appeal was
transferred from the Ninth Court of Appeals to this Court. Pending before this Court is the
Stateâs Motion to Send Original Exhibit to Court of Appeals by which it seeks to compel the
District Clerk of Montgomery County to forward to this Court a compact disk marked Stateâs
Exhibit 5, which was played for the jury over Appellantâs objection. The State also moves
that this Court return the exhibit to the Montgomery County District Clerk upon issuance
of mandate. We grant the motion.
Â Â Â Â Â Â Â Â Â Â Pursuant to Rule 34.6(g)(2) of the Texas Rules of Appellate Procedure, Barbara
Gladden Adamick, District Clerk of Montgomery County, is directed to forward Stateâs
Exhibit 5 to the Clerk of this Court on or before July 18, 2008. Upon issuance of mandate
the Clerk of this Court will return Stateâs Exhibit 5 to the Montgomery County District Clerk.
Â Â Â Â Â Â Â Â Â Â It is so ordered.
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Per Curiam
Do not publish.



e to comply with any grievance or appeal procedure of the
governmental entity relating to the suspension or termination of employment prior to filing
suit. Id. §554.006(a). Additionally, the employee must not only invoke the "applicable
grievance or appeal procedures" within 90 days of the date on which the adverse action
occurred or the employee discovered it, id. Â§554.006(b), but also the "[t]ime used by the
employee in acting under the grievance or appeal procedures" must be excluded from the
90-day limitations period mentioned in Â§554.005 of the statute. Id. Â§554.006(c). 

 Here, no one disputes that limitations began to run no later than July 24, 2001, the
day Jordan received the letter placing her on administrative separation. Nor is it disputed
that suit was filed on January 15, 2002. Counting the number of days between those two
dates inescapably leads to the conclusion that Jordan did not sue within 90 days of July
24th. Yet, the record contains evidence of a letter sent by Jordan's attorney to the local
county judge on September 9, 2001. Therein, her counsel notified the judge "that she
grieves the substantive due process violations surrounding the denial to her [of] relief from
harassment, and . . . of leave from harassment." So too did she request "a due process
hearing" and "reinstatement to [a] position of comparable responsibility, salary, in a different
precinct, and public apologies . . . ." The request for a hearing was denied on December
28, 2001. 

 In denying the request, the County not only rejected the grievance but also ended
the grievance process, according to Jordan. Thus, she continues, the period between
September 9th and December 28th must be excluded from the 90-day limitations period. 
And, if it is, then her suit was timely, she concludes.

 The flaw in Jordan's argument involves the presence of a grievance procedure. 
Implicit in the duty to comply with "applicable" grievance policies concerning the suspension
or termination of employment is the need for the existence of an applicable policy. Indeed,
one can hardly be required to exhaust administrative remedies without the existence of an
administrative remedy. Similar logic also requires one to conclude that the limitations
period can hardly be extended through compliance with an established grievance
procedure if no such procedure exists. Admittedly, the County had a grievance policy. Yet,
expressly excluded from its scope were "Administrative Separations." Given this, the policy
could not serve as a means of extending the limitations period since it was inapplicable to
Jordan's circumstance. 

 Nonetheless, Jordan contends that because an elected official may choose to
participate or not participate in the policy and nothing illustrated that Crowder (the elected
official for whom she worked) chose to participate in it, her September 9th letter tolled
limitations. Assuming arguendo that this argument was made below and also assuming
that her supervisor had not opted to comply with the policy, there still remains a dearth of
evidence indicating that some other grievance procedure applied to her circumstance. 
Indeed, she informs us of none. Without an applicable procedure with which she had to
comply, there was nothing to stop the 90-day period from running. So, we must conclude
that there existed no material issue of fact regarding the expiration of the 90-day limitations
period. In other words, the County established, as a matter of law, that limitations barred
Jordan from pursuing her whistleblower claim. 

Issues One and Three - Uniform Application of Absence Policy 


and Adverse Employment Action



 Issues one and three involve other grounds alleged by the County (in its motion for
summary judgment) to defeat Jordan's whistleblower allegation. It contended that her
removal from the County's payroll occurred pursuant to the uniform application of its
absence policy and that she suffered no adverse employment action. Because we hold the
trial court did not err in rejecting the whistleblower claim on the basis of limitations, we need
not determine whether other grounds (such as those addressed in issues one and three)
also supported its decision viz that particular cause of action. Thus, issues one and three
are also overruled. 

Issue Four - Denial of Due Process


 Jordan asserts, in her fourth issue, that she had a constitutionally protected property
interest in continued employment with the County. Though her employment was "at will"
per the County's policies, this status was allegedly modified by the policy regarding an
employee's removal from the payroll once he exhausts all his leave. So too does she posit
that her constitutionally protected liberty interests in being free from 1) retaliation for having
reported Chesson to the Texas Judicial Conduct Commission and 2) the threatening
behavior and verbal abuse of Chesson were denied her "without substantive and
procedural due process." We overrule the issue.

 Property Interest in Continued Employment 

 To have a property interest in public employment, one must prove that he had a
legitimate claim of entitlement to, as opposed to, a unilateral expectation in the job. Texas
A & M University System v. Luxemburg, 93 S.W.3d 410, 422 (Tex. App.-Houston [14th
Dist.] 2002, pet. denied); McCartney v. May, 50 S.W.3d 599, 607 (Tex. App.-Amarillo 2001,
no pet.). Yet, in Texas, continued employment generally depends upon the will of the
employer. That is, unless a specific agreement to the contrary dictates otherwise, an
employee can be released for good reason, bad reason, or no reason. Montgomery
County Hosp. Dist. v. Brown, 965 S.W.2d 501, 502 (Tex. 1998); Federal Express Corp. v.
Dutschmann, 846 S.W.2d 282, 283 (Tex. 1993). So, it follows that to the extent the "at will" 
relationship can be altered by an employment manual, the manual must contain language
that specifically and expressly limits the employer's right to terminate the employee. Trostle
v. Combs, 104 S.W.3d 206, 211 (Tex. App.-Austin 2003, no pet.). Moreover, if there
appears in the manual a disclaimer evincing that the "at will" employment relationship
remains unaffected by anything else in the manual, the disclaimer negates any implication
that the employment relationship is something other than at the will of the employer. 
Federal Express Corp. v. Dutschmann, 846 S.W.2d at 283 (holding that the employee had
no legitimate expectation in continued employment because the employment manual
contained a provision stating that nothing in the document created any contractual rights
"regarding termination or otherwise") . 

 Here, the County's policies included one declaring that "[n]othing herein shall be
construed as creating a contractual right to employment or altering the common-law right
of the County to terminate the employment of any County employee." Following it appears
the statement that "[e]mployment shall be at will, so that the employment relationship may
be terminated at the will of such person or at the will of the County at any time." 
Furthermore, the County's employee handbook also said:

 Your employment with Jefferson County is "at-will" and entered into voluntarily. You are free to resign at any time, for any reason, with or without
notice. Similarly, the County is free to terminate the employment relationship
at any time. 


This verbiage is nothing short of the disclaimer contemplated in Federal Express. It clearly
reveals an intent to maintain the "at will" employment relationship between the County and
its employees, irrespective of any other County employment policy. Thus, the suggestion
by Jordan that the administrative separation policy altered the "at will" employment
relationship and somehow vested her with an interest in continued employment was
negated, as a matter of law. 

 Nor do we find meritorious Jordan's contention that a right to continued employment
arose when she was granted permission (by the constable) to take a leave of absence,
despite having previously exhausted all her accrued leave. This is so because the
County's policies also dictated that "[n]o person acting for or purporting to act for the
County has authority to vary the employment at will relationship . . . , nor . . . make an oral
or written agreement for permanent employment or employment for any specified period
of time, except by specific Order entered in the minutes of the Commissioners' Court." We
are cited to no evidence of record suggesting that the leave granted by the constable was
incorporated into such an order. Thus, we cannot hold that his words created a material
issue of fact regarding the modification of Jordan's status as an "at will" employee. 

 Liberty Interests

 With respect to her purported liberty to be free from retaliation for having reported
Chesson to the Texas Judicial Conduct Commission and from threatening behavior and
verbal abuse from Chesson, Jordan failed to expressly mention them below as grounds to
defeat summary judgment. Because she so failed, they cannot now be used to secure a
reversal of the judgment. McConnell v. Southside I.S.D., 858 S.W.2d 337, 341 (Tex. 1993).

Issue Five - Free Speech Rights


 In her final issue, Jordan claims her free speech rights were violated due to her
termination for reporting Chesson to the Judicial Conduct Commission and the Human
Resources Department. We overrule the issue.

 Initially, we note that Jordan cited no legal authority in support of her issue, contrary
to Texas Rule of Appellate Procedure 38.1(h). While it may be that our Supreme Court
requires courts of appeal to construe the rules of appellate procedure "reasonably, yet
liberally, so that the right to appeal is not lost by imposing requirements not absolutely
necessary to effect the purpose of a rule," Republic Underwriters Ins. Co. v. Mex-Tex , Inc.,
No. 03-0662, 2004 Lexis 1247 at 12 (Tex. November 19, 2004), we know of no authority
obligating us to become advocates for a particular litigant through performing their research
and developing their argument for them. Indeed, the law and canons of ethics require that
we remain neutral. Such impartiality cannot be maintained if appellate courts must sua
sponte wave the banner dropped by the litigant, especially when the litigant has his own
legal counsel. Given this and Jordan's non-compliance with Rule 38.1(h), the issue was
waived due to inadequate briefing. Baker v. Gregg County, 33 S.W.3d 72, 79 (Tex. App.-
Texarkana 2000, no pet.). 

 Yet, assuming arguendo that the argument contained appropriate citation to
authority and was, therefore, adequately briefed, we would remain obligated to overrule it. 
This is so because the speech purportedly uttered by Jordan must involve matters of
legitimate public, as opposed to private, concern. In re Davis, 82 S.W.3d 140, 149 (Tex.
Spec. Ct. Rev. 2002); Haynes v. City of Beaumont, 35 S.W.3d 166, 178 (Tex.
App.-Texarkana 2000, no pet.). However, it has been held that disputes in the workplace,
such as complaints of harassment for informing officials about another's conduct, Haynes
v. City of Beaumont, 35 S.W.3d at 178-79, or physical confrontations between individuals
at the workplace, Brown v. University of Texas Health Center, 957 S.W.2d 911, 918 (Tex.
App.-Tyler 1997, no pet.), generally implicate private interests. 

 Here, Jordan's complaints to the Judicial Conduct Commission and Human
Resources Department liken to those involved in Haynes and Brown. They arise from her
treatment by Chesson in the workplace and her attempt to have him sanctioned for it. 
Given this, we cannot say that the trial court erred when it rejected her claim that the
County retaliated against her for exercising rights of free speech. 

 Having overruled each issue, we affirm the judgment.


 Brian Quinn

 Justice
1. According to County policy, an "administrative separation" consisted of an employee being "removed
from the County's payroll after having exhausted all earned and/or authorized time off from work . . . ."