

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 02-15-00338-CV

---

TOWN OF SHADY SHORES                                    APPELLANT

V.

SARAH SWANSON                                              APPELLEE

----------

FROM THE 442ND DISTRICT COURT OF DENTON COUNTY
TRIAL COURT NO. 14-02914-158

----------

## OPINION

----------

In this interlocutory appeal, Appellant the Town of Shady Shores (the Town) appeals the trial court's denial of its no-evidence and traditional motions for summary judgment on the claims brought against it by Appellee Sarah Swanson, the Town's former city secretary. In six issues, the Town challenges the trial court's jurisdiction and the trial court's determination of Swanson's

objections to the Town's no-evidence summary judgment motion. After careful review, we affirm in part and reverse in part.

## I. Background

At a special meeting of the Town of Shady Shores City Council (the Council) on February 24, 2014, the Town provided Swanson with an employee performance evaluation. The Council then gave her ten minutes to respond to the evaluation. It further allowed her to respond in writing and to address the Council regarding the evaluation at a special council meeting three days later on February 27, 2014. Both Swanson and her attorney appeared at the February 27th council meeting. At that meeting, the Council voted to terminate Swanson's employment for lack of confidence in her performance as city secretary. *See* Tex. Loc. Gov't Code Ann. § 22.077(b) (West 2008). Swanson then sued the Town.

In her original petition, Swanson alleged that the Town fired her because she reported and refused to engage in destroying a tape recording of a meeting of the Town's investment committee, a subcommittee of the Council. She alleged that after she refused, members of the investment committee destroyed the recording; that she told the Council, the mayor, and the Town's attorney that the recording's destruction violated state law; and that this reporting led to her firing. Swanson asserted a statutory wrongful discharge claim under the Texas Whistleblower Act, Tex. Gov't Code Ann. § 554.0035 (West 2012), and a

2

common law claim for wrongful discharge under *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733, 735 (Tex. 1985).

In response, the Town filed a plea to the jurisdiction asserting governmental immunity for both claims. Swanson then amended her petition to add a claim for violation of her free speech rights under the Texas Constitution and claims for declaratory relief based on the Town's alleged violations of the Texas Open Meetings Act (TOMA) and of her rights under the "due course" provision of article 1, section 19 of the Texas Constitution. *See* Tex. Const. art. I, § 19; Tex. Gov't Code Ann. § 551.002 (West 2017). Importantly, Swanson did not allege separate and distinct claims for violations of TOMA or the Texas Constitution, rather she alleges that the Town committed violations of these provisions in support of her standalone claim for a declaratory judgment.

In support of these claims, Swanson alleged that on February 12, 2014, the Council wrongfully deliberated in executive session about whether to terminate her employment, that the decision to do so was also made during executive session that day, and that no agenda had been posted before the meeting apprising the public of the purpose of the executive session. Swanson also alleged that for the February 27, 2014 special council meeting at which the Council terminated her employment, the Town did not post an agenda before the meeting sufficiently apprising the public that action might be taken to remove her from her job. Swanson further asserted that the Town violated article I, section 19 of the Texas Constitution because she was not afforded the opportunity to

3

confront her accusers or otherwise address the Council before the deliberation in which the decision was made to terminate her employment and because no procedure was adopted or employed for her to protest or appeal the Council's decision. Additionally, Swanson added allegations that the Town fired her in retaliation for reporting not only the destruction of the meeting tape, but also for reporting that the mayor, Cindy Spencer, had taken recordings of town meetings home with her and had at one point intended to call Swanson into a meeting under false pretenses to ask for Swanson's resignation.

Before the trial court ruled on the Town's plea to the jurisdiction—rather than amend its plea or file another such plea on the claims in Swanson's amended petition—the Town filed a motion for traditional summary judgment and a separate motion for no-evidence summary judgment that challenged the trial court's jurisdiction of Swanson's additional claims. In its no-evidence motion, the Town asserted that it was entitled to governmental immunity on Swanson's declaratory judgment claims because she had no evidence that she was entitled to declaratory relief. In its traditional motion, the Town asserted that it was entitled to summary judgment on Swanson's declaratory judgment claims because the claims did not fall within the scope of permissible declaratory judgment actions against governmental entities.

In her summary judgment response, Swanson argued that the Town was not entitled to a no-evidence summary judgment because it bore the burden of proof on establishing governmental immunity. She also challenged the Town's

4

traditional grounds, arguing that genuine issues of material fact precluded summary judgment.

The trial court granted the Town's plea to the jurisdiction as to Swanson's original claims and dismissed Swanson's Whistleblower Act and *Sabine Pilot* claims. The trial court denied the Town's summary judgment motions. The Town then filed this interlocutory appeal challenging the denial of its motions for summary judgment.

## II. Challenges to the Trial Court's Jurisdiction

A plaintiff has the burden of alleging facts that affirmatively demonstrate that the trial court has subject-matter jurisdiction. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012). Because a governmental unit has immunity from suit, a plaintiff asserting a claim against a governmental unit must allege facts that affirmatively demonstrate that the legislature has waived immunity for the claims brought. *Univ. of Tex. at Arlington v. Williams*, 455 S.W.3d 640, 643 (Tex. App.—Fort Worth 2013), *aff'd,* 459 S.W.3d 48 (Tex. 2015).

The absence of subject-matter jurisdiction may be raised by a plea to the jurisdiction or by a motion for summary judgment. *Bland I.S.D. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). A motion or plea asserting governmental immunity involves a question of law that we review de novo. *Harris County Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex. 2009).

When a governmental entity challenges the plaintiff's pleadings for failing to demonstrate jurisdiction, the court construes the pleadings liberally, taking all

5

factual assertions as true and looking to the plaintiff's intent. *Heckman*, 369 S.W.3d at 150. If the plaintiff's pleadings affirmatively negate the existence of jurisdiction, we must grant the plea to the jurisdiction. *Id.* If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the plaintiffs should be afforded the opportunity to amend. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004).

If a defendant governmental entity challenges the existence of jurisdictional facts, a court must also consider the relevant evidence necessary to resolve the jurisdictional issues raised. *Heckman*, 369 S.W.3d at 150; *Miranda*, 133 S.W.3d at 228. The governmental entity has the burden to assert and support with evidence that the trial court lacks subject matter jurisdiction. *Heckman*, 369 S.W.3d at 150; *Miranda*, 133 S.W.3d at 228. We must grant the jurisdictional challenge if the governmental entity presents undisputed evidence that negates the existence of the court's jurisdiction. *Heckman*, 369 S.W.3d at 150.

### III. Swanson Did Not Raise Distinct TOMA Claims.

In its first issue, the Town contends that the trial court had no jurisdiction over Swanson's TOMA claims. However, the record before us is clear that in the trial court, the Town raised traditional summary judgment grounds asserting its entitlement to judgment on the merits of Swanson's claims, rather than on jurisdictional, government immunity grounds. *See Cullum v. White*, 399 S.W.3d

6

173, 188 (Tex. App.—San Antonio 2011, pet. denied) (noting appellate courts generally do not have jurisdiction to hear the denial of a motion for summary judgment). Further, while Swanson asserted grounds for declaratory relief based on TOMA violations, she did not assert a separate, standalone claim under TOMA. Without a distinct TOMA claim being alleged by Swanson against the Town, we must overrule the Town's first issue. *See Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000) ("[C]ourts have no jurisdiction to issue advisory opinions."); *accord Princeton Univ. v. Schmid*, 455 U.S. 100, 102, 102 S. Ct. 867, 869 (1982) ("We do not sit to decide hypothetical issues or to give advisory opinions"). However, to the extent the Town's arguments apply to its challenges to Swanson's claim for declaratory relief based on the Town's alleged TOMA violations, we consider them below under our analysis of the Town's third issue.

## IV. Swanson's Declaratory Judgment Claims

In its third issue, the Town makes several arguments for why the trial court should have dismissed Swanson's declaratory judgment claims. First, the Town contends that Swanson does not qualify for relief under the Uniform Declaratory Judgments Act (UDJA). More specifically, the Town contends that: (a) Swanson is not a person interested under a deed, will, written contract, or other writings constituting a contract; (b) Swanson is not a person whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, and she produced no evidence that she fits in that category in

7

response to its no-evidence and traditional summary judgment motions; and (c) Swanson does not seek a determination on any question of construction or validity of an instrument, statute, ordinance, contract, or franchise. Second, the Town argues that to the extent Swanson seeks a declaration of rights under a statute, the UDJA does not waive the Town's governmental immunity for such a claim.

In the Town's second issue, it asserts that Swanson presented no viable claim for relief under the "due course" provision in article I, section 19 of the Texas Constitution. It argues that: (a) Swanson has no evidence that she was denied any right to confront her accusers and address the Council before the February 12, 2014 meeting; (b) she had no constitutional right to appeal the Council's termination decision; and (c) she was provided with notice and an opportunity to be heard. However, Swanson raised these constitutional violations only as a basis for relief under the UDJA. As with the Town's alleged TOMA violations, Swanson simply did not allege separate, standalone constitutional claims against the Town in her lawsuit. We therefore overrule the Town's second issue but consider the Town's arguments challenging the viability of her constitutional claims as part of its third issue.

For the reasons set forth herein, we conclude that the Town has immunity for some but not all of the declaratory relief requested by Swanson.

**A.**     **The Trial Court Did Not Err by Denying the Town's No-Evidence Summary Judgment Motion on Swanson's UDJA claims.**

The Town argues that, because Swanson provided no evidence in response to its no-evidence summary judgment motion, the trial court erred by denying it a no-evidence summary judgment as to Swanson's declaratory judgment claims. This argument, however, severely mistakes Swanson's burden in the trial court. Before Swanson had any burden to produce jurisdictional evidence, the Town first had to produce evidence negating jurisdiction. *See Miranda*, 133 S.W.3d at 228 (stating that for pleas to the jurisdiction challenging the existence of jurisdictional facts, requiring the state to meet the summary judgment standard of proof protects plaintiffs "from having to 'put on their case simply to establish jurisdiction'" and that a plaintiff must come forward with evidence to raise a fact question regarding the jurisdictional issue only "after the state asserts and supports with evidence that the trial court lacks subject matter jurisdiction" (citation omitted)); *see also Mission Consol. I.S.D. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012) (reiterating that when challenging the existence of jurisdictional facts, the defendant government entity carries the burden to meet the summary judgment proof standard for its assertion that the trial court lacks jurisdiction); *City of El Paso v. Collins*, 483 S.W.3d 742, 755–56 (Tex. App.—El Paso 2016, no pet.) (holding that a defendant government entity "**cannot simply deny the existence of jurisdictional facts and force the plaintiffs to raise a fact issue**" and that before a plaintiff has any burden to come forward with

9

jurisdictional evidence, the government entity must first come forward with sufficient evidence to negate jurisdiction) (emphasis added); *City of Austin v. Rangel*, 184 S.W.3d 377, 382 (Tex. App.—Austin 2006, no pet.) (same).

Because a governmental entity, like the Town, has the burden to negate the existence of jurisdictional facts before a plaintiff has any burden to produce evidence raising a fact question on jurisdiction, no-evidence summary judgment motions may not be used by a governmental entity as a vehicle to defeat jurisdiction or otherwise circumvent its burden to disprove jurisdiction. *See Arthur v. Uvalde Cty. Appr. Dist.*, No. 04-14-00533-CV, 2015 WL 2405343, at *9 (Tex. App.—San Antonio May 20, 2015) (mem. op.) ("Permitting UCAD to challenge subject matter jurisdiction in a no-evidence motion for summary judgment improperly shifts the jurisdictional evidentiary burdens."); *Thornton v. Ne. Harris Cty. MUD*, 447 S.W.3d 23, 40 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) ("Permitting MUD to challenge subject matter jurisdiction in a no-evidence motion for summary judgment improperly shifts the jurisdictional evidentiary burdens—effectively requiring the Thorntons to fully marshal their evidence simply to establish jurisdiction and eliminating any burden on MUD as a governmental entity to disprove jurisdiction."); *cf. Green Tree Servicing, LLC v. Woods*, 388 S.W.3d 785, 793–94 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (holding that the defendant—not a governmental entity—could not challenge standing through a no-evidence motion because such a procedure would "allow

10

defendants an end run around the safeguards established by the Texas Supreme Court").

In reaching this holding, we recognize that this court has affirmed the granting of no-evidence summary judgment for a governmental entity on immunity grounds. *City of Haltom City v. Aurell*, 380 S.W.3d 839 (Tex. App.—Fort Worth 2012, no pet.). That opinion is easily distinguishable, however. In that opinion, the plaintiff did not question whether a no-evidence motion is a proper vehicle for raising immunity, and we did not consider the issue. Given the clear language and direction from the Texas Supreme Court provided in *Miranda* and *Mission Consolidated*, we agree with our sister courts of appeals that a government entity may not challenge subject matter jurisdiction in a no-evidence summary judgment motion because doing so improperly shifts the initial jurisdictional evidentiary burden to the plaintiff. *See Thornton*, 447 S.W.3d at 40. We disapprove of our opinion in *Aurell* to the extent it reads otherwise.

Elsewhere in its brief, the Town cites *State v. Lueck*, 290 S.W.3d 876, 881–84 (Tex. 2009), for the proposition that Swanson, not the Town, had the initial burden to come forward with evidence to support jurisdiction. *Lueck* does not contradict our holding that the Town had the initial burden to produce evidence negating jurisdiction. *See Lueck*, 290 S.W.3d at 881–84 (addressing pleading requirements with respect to jurisdiction); *see also Mission Consol. I.S.D.*, 372 S.W.3d at 637 (applying *Lueck* to a claim under the Texas Commission on Human Rights Act and stating that "[w]hile a plaintiff must plead

11

the elements of her statutory cause of action—here the basic facts that make up the prima facie case— . . . , she will **only** be required to submit evidence **if** the defendant presents evidence negating one of those basic facts" (emphasis added)).  We therefore disagree with the Town that *Lueck* required Swanson to marshal evidence showing jurisdiction before the Town met its own evidentiary burden.  Simply put, a governmental entity cannot file a no-evidence motion for summary judgment on governmental immunity grounds to altogether avoid the jurisdictional burden that it would have to demonstrate when asserting a plea to the jurisdiction.  To hold otherwise would effectively turn Texas governmental immunity jurisprudence on its head.

Therefore, the trial court did not err by denying the Town's no-evidence summary judgment motion challenging the court's subject-matter jurisdiction to Swanson's declaratory judgment claims.  We overrule this part of the Town's third issue.

**B.  TOMA Waives Immunity for Some of Swanson's UDJA Claims.**

    **1.  TOMA Authorizes Swanson to Seek a Declaration of Rights, Status, or Other Legal Relations.**

The Town argues that it is immune from Swanson's UDJA claims because she does not fit within the category of persons entitled to relief under section 37.004(a) of the UDJA.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.004 (West 2015).  We disagree.  Under Swanson's pleadings, she easily qualifies as an interested person seeking to stop, prevent, and reverse violations of TOMA.  *See*

Tex. Gov't Code Ann. § 551.142 (West 2017); *City of San Antonio v. Fourth Court of Appeals*, 820 S.W.2d 762, 765 (Tex. 1991) (stating that the intended beneficiaries of TOMA are members of the interested public); *Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 300 (Tex. 1990) (stating that under TOMA, citizens "are entitled not only to know what government decides but to observe how and why every decision is reached").  She is therefore a person seeking to obtain a declaration of rights, status, or other legal relations under a statute.

The Town next argues that the UDJA does not waive governmental immunity when a plaintiff, like Swanson, seeks a declaration of her rights under a statute or other law.  On this point, the Town is correct.  *See Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621 (Tex. 2011).  The UDJA contains a limited waiver of immunity for challenges to the validity of an ordinance or statute.  *See Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 633–35 (Tex. 2010).  The UDJA does not, however, provide a general waiver of immunity, and "sovereign immunity will bar an otherwise proper UDJA claim that has the effect of establishing a right to relief against the State for which the Legislature has not waived sovereign immunity."  *Tex. Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 388 (Tex. 2011).  Consequently, a plaintiff who sues a governmental entity under the UDJA must allege a waiver of immunity from some other source*.  See id.*  In this case, TOMA provides that waiver, at least for some of what Swanson seeks under the UDJA.

13

TOMA provides a limited waiver of immunity for an "interested person" to "bring an action by mandamus or injunction to stop, prevent, or reverse a violation or threatened violation of this chapter by members of a governmental body," and it allows for the recovery of litigation costs and reasonable attorney's fees. Tex. Gov't Code Ann. § 551.142. TOMA further provides that "[a]n action taken by a governmental body in violation of this chapter is voidable." *Id.* § 551.141 (West 2017). The purpose of this provision is to allow courts to declare void actions taken in violation of TOMA.[1] *Ferris v. Tex. Bd. of Chiropractic Exam'rs*, 808 S.W.2d 514, 517 (Tex. App.—Austin 1991, writ denied); *see also City of Fort Worth v. Groves*, 746 S.W.2d 907, 912 (Tex. App.—Fort Worth 1988, no writ) (observing that TOMA originally provided only for injunctive and mandamus relief, but "[i]n the eyes of the courts and the legislature that was not sufficient," and by legislative amendment, "[a]ccess may now be had to the courts to set aside actions taken in violation of" TOMA); *Love Terminal Partners v. City of Dall.*, 256 S.W.3d 893, 897 (Tex. App.—Dallas 2008, no pet.) (stating that if conduct is voidable, "the act is valid until adjudicated and declared void").

---

[1] We disagree in part with the recent holding of the Austin court of appeals that TOMA does not waive immunity for declaratory relief. *See City of New Braunfels v. Carowest Land, Ltd.*, No. 03-16-00249-CV, 2017 WL 2857142, at *5 (Tex. App.—Austin June 29, 2017, no pet.). Rather, although TOMA does not broadly waive immunity for all declaratory judgment actions, it does waive immunity for a declaration that an action taken in violation of TOMA is void. *See* Tex. Gov't Code Ann. § 551.141.

Here, Swanson seeks a declaration that the Town violated TOMA in a number of specific ways when terminating her employment and that the termination was void under TOMA and seeks injunctive relief relating to making available to the public agendas and meeting recordings for past and future Town meetings, back pay, and attorney's fees. Because TOMA waives a governmental entity's immunity for injunctive relief, for a declaration that the entity's action is void for violating TOMA, and for attorney's fees and costs for a plaintiff who prevails in an action based on TOMA, the Town has no immunity for Swanson's claims seeking such relief. *See* Tex. Gov't Code Ann. §§ 551.141, 551.142; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 37.011 (West 2015) (authorizing further relief based on a declaratory judgment when necessary or proper); *Tex. Dep't of Pub. Safety v. Moore*, 985 S.W.2d 149, 156 (Tex. App.—Austin 1998, no pet.) (noting that the UDJA allows for injunctive relief ancillary to a declaration of rights). As a result, we overrule the Town's third issue as to these claims.

For the remaining requested declaratory relief sought by Swanson—that the Town violated TOMA in certain specific ways—although TOMA waives immunity for a court to render injunctive or mandamus relief for violations of its provisions, it does not provide a waiver for the types of declarations sought by Swanson. *See Carowest*, 2017 WL 2857142, at *5. Accordingly, the trial court should have dismissed Swanson's TOMA-based UDJA claims for lack of jurisdiction to the extent she seeks relief beyond injunctive or mandamus relief

15

and a declaration that the Town's termination of her employment was void.[2]  We accordingly sustain the Town's third issue as to these claims.

As for Swanson's request for back pay, she seeks pay she would have received had her employment not been terminated and does not seek pay for work she actually performed.  The back pay she seeks therefore constitutes money damages.  TOMA does not waive immunity for such a claim.  *See City of Round Rock v. Whiteaker*, 241 S.W.3d 609, 634 (Tex. App.—Austin 2007, pet. denied); *see also City of El Paso v. Heinrich*, 284 S.W.3d 366, 374 (Tex. 2009) ("[R]etrospective monetary claims are generally barred by immunity.").  The trial court therefore had no jurisdiction to render a declaratory judgment that the Town owed Swanson back pay or to render a judgment ordering the Town to pay back pay.  *See Sawyer Tr.*, 354 S.W.3d at 388 ("[S]overeign immunity will bar an otherwise proper DJA claim that has the effect of establishing a right to relief against the State for which the Legislature has not waived sovereign immunity.").  We sustain the Town's third issue as to Swanson's claim for back pay.

### 2. The Town Did Not Negate Viability of Swanson's TOMA-Based UDJA Claims.

If the Town's jurisdictional evidence negated the existence of jurisdictional facts for Swanson's UDJA claims that are based on alleged TOMA violations, then the trial court has no jurisdiction over those claims.  *See Heckman*,

---

[2]Swanson also sought declaratory relief related to an ultra vires claim against the Town's former mayor, but those claims are not before this court in this appeal.

369 S.W.3d at 150. Accordingly, the Town's arguments under its first issue are relevant to whether it negated the existence of viable UDJA claims based on TOMA violations, and we therefore consider those arguments here.

The Town contends that: (1) Swanson produced no evidence that the Council violated TOMA by improperly deliberating and making decisions about her employment on or before February 12, 2014; (2) the February 27, 2014 meeting complied with TOMA; and (3) the validity of the February 27, 2014 meeting renders Swanson's complaints about prior meetings irrelevant.

**a.    The Town's contentions regarding the February 12, 2014 meeting did not shift the burden to Swanson to produce jurisdictional evidence.**

As part of her request for declaratory relief, Swanson alleged that the Council deliberated and decided to terminate her employment on or before February 12, 2014, at a meeting that violated TOMA. The Town argues that Swanson has no evidence that the Council violated TOMA on or before that meeting. The Town's argument under this part of its issue is based entirely on what it characterizes as an inadequate response from Swanson to its no-evidence summary judgment motion. We have already held that Swanson had no burden to produce evidence on the issue until the Town met its burden as to jurisdictional evidence.

Therefore, reviewing the evidence submitted by the Town, we hold the Town did not conclusively negate jurisdiction. The Town's jurisdictional evidence included:    (1) the transcript from Swanson's October 14, 2014 deposition;

17

(2) Swanson's responses to the Town's interrogatories; (3) affidavits of the Town mayor and of Town aldermen; (4) the notices and minutes from the Council meetings of February 18, 24, and 27, 2014; (5) Swanson's performance review provided to her at the February 24 meeting; (6) the transcript from Swanson's August 24, 2015 deposition; and (7) a letter from Swanson's attorney to the Town's attorney responding to Swanson's performance review. This evidence did not establish as a matter of law that the Town did not deliberate about and decide to terminate Swanson's employment on or before February 12, 2014. Swanson's depositions, interrogatory responses, and her attorney's letter did not concede that no such meetings took place. Moreover, the minutes and notices from the February 18, 24, and 27 meetings did not mention the existence or absence of earlier meetings addressing Swanson's employment, and neither did the aldermen's affidavits.

Nor has the Town shown that Swanson cannot show jurisdiction even if given the opportunity to do so. *See Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95–96 (Tex. 2012) (requiring a governmental entity that raises jurisdiction for the first time on appeal to show that (1) the record conclusively negates jurisdiction; (2) the plaintiff had a full and fair opportunity in the trial court to develop the record to show jurisdiction yet failed to do so; or (3) if the plaintiff did not have such an opportunity, she cannot show jurisdiction even if the case is remanded to the trial court and she is given such an opportunity). And because the Town did not raise a jurisdictional challenge to the viability of Swanson's TOMA-based

18

claims in its traditional summary judgment motion, and because (as Swanson pointed out in the trial court) it could not shift its burden to Swanson by way of a no-evidence summary judgment motion, we cannot say that Swanson had a full and fair opportunity in the trial court to develop the record to demonstrate the court's jurisdiction on these claims. *See id.* The trial court therefore correctly declined to dismiss Swanson's UDJA claims based on the February 12, 2014 meeting.

### b. The Town's February 27, 2014 meeting did not moot Swanson's TOMA complaints.

The Town further argues that the trial court had no jurisdiction over Swanson's claims because there is no justiciable controversy. The Town contends that Swanson's TOMA complaints about any meeting before its February 27, 2014 special council meeting are irrelevant because it was at that meeting that the Council deliberated and decided to terminate Swanson's employment. *See City of Farmers Branch v. Ramos*, 235 S.W.3d 462, 469 (Tex. App.—Dallas 2007, no pet.) (noting that an issue is moot when one seeks a judgment but no controversy exists or when one seeks a judgment that "cannot have any practical legal effect on a then-existing controversy"). It argues that because a city council may hold a valid meeting and authorize actions it had authorized at a previous invalid meeting, the Council's February 27th meeting rendered Swanson's TOMA complaints irrelevant even if its actions at its prior meetings were invalid and in violation of the statute. *See Dall. Cty. Flood Control*

*Dist. No. 1 v. Cross*, 815 S.W.2d 271, 283 (Tex. App.—Dallas 1991, writ denied) (holding that a governmental body that has violated TOMA may meet again in a TOMA-compliant meeting and reauthorize actions it previously authorized, but ratification does not have retroactive effect).

The Town's argument is, of course, based on its own conclusion that the February 27th meeting complied with TOMA. However, Swanson alleged that that meeting did not comply with TOMA, and we hold below that the jurisdictional evidence submitted by the Town did not negate the validity of Swanson's claim.

Further, whether the February 27, 2014 council meeting complied with TOMA is irrelevant to some of the relief Swanson sought because she sought more than reinstatement in her suit. For example, based on the Town's alleged violations of TOMA, she requested that the trial court require the Town to "make available to the public the certified agenda or tape of any part of a meeting that was required to be open under" TOMA and "[a] permanent injunction requiring contemporaneous recording of all deliberations of the . . . council and subcommittees, with approval of the minutes of such meetings by the governing body during a regularly-scheduled meeting for which an agenda item has been timely posted." Even if the February 27th meeting cured any previous violation of TOMA the Town committed in deliberating and deciding about Swanson's employment, it did not render all her claims moot. *See Ramos*, 235 S.W.3d at 469–70 ("'Our citizens are entitled to more than a result. They are entitled not only to know what government decides but to observe how and why every

20

decision is reached.'" (quoting *Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 300 (Tex. 1990)).  A justiciable controversy remains.

### c.    The Town failed to establish that its February 27, 2014 meeting complied with TOMA.

The Town also asserts that its February 27, 2014 meeting and its notice of the meeting complied with TOMA and that, because Swanson cannot show a violation of TOMA for that meeting, the trial court did not have jurisdiction over a claim based on a TOMA violation as to that meeting.  *See Lueck*, 290 S.W.3d at 883 (holding that because the Whistleblower Act waives immunity only for violations of the Act, the elements of a claim under the Act may be considered to determine both jurisdiction and liability).

In a deposition transcript the Town included with its summary judgment motion, Swanson testified that at the February 27th meeting she objected to the Town's convening in closed session to discuss her employment.  The Town also included a copy of the minutes from that meeting, which show that the Town met in closed session to discuss Swanson's employment.  The minutes do not reflect an objection by Swanson, but neither do they state that no objection was made.  Thus, the Town's own summary judgment evidence raises a genuine issue of material fact about whether the Town violated TOMA at the February 27 meeting. *See* Tex. Gov't Code Ann. § 551.074 (West 2017) (prohibiting a governmental body from conducting a closed meeting when deliberating about the dismissal of a public employee if the employee requests an open meeting).

21

We overrule the Town's third issue as to Swanson's TOMA-based UDJA claims seeking injunctive relief, declarations that actions taken at Town meetings were void for violating TOMA, and attorney's fees and costs authorized by TOMA. We sustain the Town's third issue as to Swanson's claims for other declarations arising from TOMA violations and for her claim for back pay.

## C.  Swanson Did Not Allege Viable Constitution-Based UDJA Claims.

Swanson pled for declarations that the Town violated her rights under article I, section 19 of the Texas Constitution because (1) she was not given an opportunity "to confront her accusers or otherwise address the [C]ouncil prior to the deliberation in which the decision was made to involuntarily terminate [her] employment and seek her removal as town secretary on or before February 12, 2014" and (2) "[n]o procedure was adopted or employed for Plaintiff to protest the decision to terminate her employment and seek her removal from office, including the opportunity to appeal." Even assuming that the Town is the proper defendant for Swanson's due process claims,[3] the trial court does not have jurisdiction over them.

"[T]he State has no power to commit acts contrary to the guarantees found in the Bill of Rights," and cities are not immune from suits asserting state

---

[3]*But see Brantley v. Tex. Youth Comm'n*, 365 S.W.3d 89, 105 (Tex. App.—Austin 2011, no pet.) (stating that any claim by former state agency employees for equitable relief from a constitutional violation would be barred by sovereign immunity to the extent that the employees purported to assert it against the state agency rather than the agency's executive director).

22

constitutional violations when the remedy sought is equitable relief. *City of Fort Worth v. Jacobs*, 382 S.W.3d 597, 600 (Tex. App.—Fort Worth 2012, pet. dism'd). Thus, "[g]overnmental immunity does not shield a governmental entity from a suit for declaratory relief based on alleged constitutional violations." *City of Arlington v. Randall*, 301 S.W.3d 896, 908 (Tex. App.—Fort Worth 2009, pet. denied), *disapproved of on other grounds by Tex. Dep't of Aging & Disability Servs. v. Cannon*, 453 S.W.3d 411 (Tex. 2015); *see also City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex. 1995) ("[S]uits for equitable remedies for violation of constitutional rights are not prohibited."); *Chisholm Trail SUD Stakeholders Grp. v. Chisholm Trail Special Util. Dist.*, No. 03-16-00214-CV, 2017 WL 2062258, at *6 (Tex. App.—Austin May 11, 2017, pet. denied) (mem. op.).

However, "[a] claimant seeking a declaratory action must already have a cause of action at common law or under some statutory or constitutional provision." *Randall*, 301 S.W.3d at 908; *see also Chisolm Trail*, 2017 WL 2062258, at *6 (noting that for the trial court to have jurisdiction over a constitutional claim, "a plaintiff must actually plead a valid constitutional violation"). Unless Swanson pled facts demonstrating a legitimate property or liberty interest in her employment, she did not allege a viable constitutional claim. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541–42, 105 S. Ct. 1487, 1493 (1985) (quotation marks and citation omitted) (providing that "the Due Process Clause provides that certain substantive rights—life, liberty, and

23

property—cannot be deprived except pursuant to constitutionally adequate procedures," and that such a deprivation must therefore "be preceded by notice and opportunity for hearing appropriate to the nature of the case"); *Hamilton v. City of Wake Vill.*, 593 F. Supp. 1294, 1296 (E.D. Tex. 1984); *see also Univ. of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 929 (Tex. 1995) (observing that while the Texas Constitution refers to "due course" rather than "due process," "we regard these terms as without meaningful distinction," and "in matters of procedural due process, we have traditionally followed contemporary federal due process interpretations of procedural due process issues").

### 1. Swanson's Performance Review Did Not Affect Her Liberty Interest.

"A public employer may unconstitutionally deprive its employee of a liberty interest if it discharges him under stigmatizing circumstances without giving the employee an opportunity to clear his name." *Caleb v. Carranza*, 518 S.W.3d 537, 545 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (citing *Arrington v. Cty. of Dall.*, 970 F.2d 1441, 1447 (5th Cir. 1992)). To plead a claim based on the deprivation of a constitutional right to a name-clearing hearing, "a plaintiff must allege that [s]he was a public employee, that [s]he was discharged, that stigmatizing charges were made against [her] in connection with [her] discharge, that the charges were false, that the charges were made public, that [s]he requested a name-clearing hearing, and that the hearing was denied." *Id.* "[T]he process due such an individual is merely a hearing providing a public forum or

24

opportunity to clear one's name, not actual review of the decision to discharge the employee." *Hughes v. City of Garland*, 204 F.3d 223, 226 (5th Cir. 2000) (citation and quotation marks omitted). "A party does not have a liberty interest in [her] reputation . . . unless [s]he can establish that the governmental employer's charges against [her] rise to such a level that they create a 'badge of infamy' which destroys the claimant's ability to take advantage of other employment opportunities." *Evans v. City of Dall.*, 861 F.2d 846, 851 (5th Cir. 1988); *see also Hughes*, 204 F.3d at 226 ("[A] constitutionally protected liberty interest is implicated only if an employee is discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities." (citation and internal quotation marks omitted)); *Phelan v. Tex. Tech Univ.*, No. 07-07-0171-CV, 2008 WL 190741, at *10 (Tex. App.—Amarillo Jan. 23, 2008, pet. denied) (mem. op.) ("[A] liberty interest is affected only when a plaintiff is terminated for reasons which were false, stigmatizing, and published, such that his standing in the community is seriously damaged or stigmatized to the extent he cannot seek or obtain other employment.").

The aldermen's complaints about Swanson's performance were made public at the February 24, 2014 special council meeting; at Swanson's request, the Council gave her a performance review in open session rather than in closed session. The complaints about Swanson's performance given at the special council meeting were, essentially, that she was unable to perform the tasks

required of her, was lax in her performance of her duties, and was once rude to the mayor. The charges against Swanson do not rise to the level that their publication affected her liberty interest in her reputation. *See, e.g.*, *Evans*, 861 F.2d at 851 & n.29 (holding that criticism of the plaintiff's work indicated excessive absenteeism, poor attitude, public criticism of his department, bad language, and alienation of co-workers, not accusations of dishonesty or immorality, and were not stigmatizing); *see also O'Neill v. City of Auburn*, 23 F.3d 685, 692 (2d Cir. 1994) (holding that statements about city's superintendent of public works that he had poor relationship with state agencies, that his work was not up to par, and that his work was sloppy were not stigmatizing).

While the review did allege that Swanson once gave "an untruthful reply" to a resident, read in context, the statement did not impugn Swanson's character for honesty. Rather, it alleged that Swanson failed to follow correct procedure and was lax in performing her duties. The review stated that the resident had inquired about his request for an assigned address for a lot and was told by Swanson that she was waiting for a letter on the matter from the mayor. The review stated that "[p]reviously, in the same situation, the letter was written by [Swanson] and given to the Mayor for a signature. Procedure was known, but not followed." The allegation did not make the kind of accusation of dishonesty that creates stigma. *Compare Huffstutler v. Bergland*, 607 F.2d 1090, 1092 (5th Cir. 1979) (noting that the plaintiff's honesty was rated as "unsatisfactory" in a performance review but that, in the context of the review, in which the plaintiff

26

also received unsatisfactory ratings for dependability, productivity, quality of work, professional interest, attendance, and punctuality, and in which the reviewer stated that the plaintiff would only work when watched, the district court's conclusion that the unsatisfactory rating for honesty was not stigmatizing was not clearly erroneous because it did not accuse the plaintiff of property theft or constitute a "badge of infamy"), *with Pasour v. Phila. Hous. Auth.*, No. 13–2258, 2013 WL 4014514, at *1, *4 (E.D. Pa. Aug. 7, 2013) (holding that false statements that agency employee, who was responsible for providing advice to his supervisors regarding labor and employment matters, had engaged in an unlawful conspiracy to conceal sexual harassment charges, were stigmatizing because they called into question the employee's reputation and integrity as an employee and threatened his future employment), *Holmes v. Town of East Lyme*, 866 F. Supp. 2d 108, 126 (D. Conn. 2012) (statements accusing employee of theft of services "directly addressed [the employee's] reputation for honesty and morality" and were stigmatizing), *and Willbanks v. Smith Cty.*, 661 F. Supp. 212, 215, 216 (E.D. Tex. 1987) (holding that statements about deputy sheriff falsely accusing him of stealing saddles and cattle were stigmatizing).

Because the allegations about Swanson's performance made in connection with her termination were not stigmatizing, her termination did not affect her liberty interest. *See Caleb*, 518 S.W.3d at 545. Accordingly, Swanson has no due process claim based on a deprivation of liberty, and the trial court

27

had no jurisdiction to consider a declaratory judgment claim based on such a ground.

## 2. Swanson Had No Property Interest in Her Employment.

A constitutionally-protected property interest is "an individual entitlement grounded in state law, which cannot be removed except 'for cause'." *Grounds v. Tolar I.S.D.*, 856 S.W.2d 417, 418 (Tex. 1993) (citation and quotation marks omitted). "To state a claim based on the deprivation of a property interest in [her] employment, a plaintiff must show that . . . [she] has a protected property interest in [her] employment," and "[a]n employee has a property interest in [her] employment only when [s]he has a legitimate right to continued employment." *See Martinez v. City of Dall.*, No. 3:16-CV-2890-M, 2017 WL 4298134, at *2 (N.D. Tex. Sept. 28, 2017); *see also Moulton v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993) ("To succeed with a claim based on . . . due process in the public employment context, the plaintiff must show two things: (1) that he had a property interest/right in his employment, and (2) that the public employer's termination of that interest was arbitrary or capricious."). Stated otherwise, to have a property interest in public employment, Swanson must have a legitimate claim of entitlement to continued employment. *Tex. A & M Univ. Sys. v. Luxemburg*, 93 S.W.3d 410, 422 (Tex. App.—Houston [14th Dist.] 2002, pet. denied).

Although General George S. Patton, Jr. famously quipped that a "civil servant is sometimes like a broken cannon—it won't work and you can't fire it"

28

(GREAT QUOTES FROM GREAT LEADERS 124 (compiled by Peggy Anderson, 1990)), in Texas, "unless a specific agreement to the contrary dictates otherwise, a[] [public] employee can be released for good reason, bad reason, or no reason." *Jordan v. Jefferson Cty.*, 153 S.W.3d 670, 674 (Tex. App.—Amarillo 2004, pet. denied). Swanson, however, did not allege the existence of an agreement limiting the Town's ability to terminate her employment. She did not allege that she had an employment contract with the Town or that she had an understanding with the Town that she would be fired only for cause. *See, e.g.*, *Perry v. Sindermann*, 408 U.S. 593, 599–600, 92 S. Ct. 2694, 2699 (1972) (holding that though the plaintiff college professor had no formal tenure, the plaintiff had created a fact issue about whether he had tenure under a de facto tenure program).

Further, the jurisdictional evidence negates the existence of any such property interest. *First*, while the Town's employee handbook sets out procedures the Council follows before terminating an employee—if an employee is facing termination, the Council will give the employee the reasons for termination, and the employee may, within forty-eight hours, respond to the termination effort and challenge the grounds for termination—the handbook specifies that its employees are at-will. *See id.*, 92 S. Ct. at 2699 (holding that when a handbook specifies that employment is at-will, the handbook negates any implication that the employment is anything but at-will). The handbook therefore did not give Swanson a property interest in continued employment.

29

*Second*, under section 22.077 of the local government code, a city secretary has no right to continued employment. Under section 22.077(a), a governing body must provide a city secretary notice and a hearing before terminating her employment, but only if the termination is for incompetency, corruption, misconduct, or malfeasance. *See* Tex. Loc. Gov't Code Ann. § 22.077(a). Unless terminating her employment on those grounds, the Council could remove Swanson under section 22.077(b) by vote of the governing body at any time without notice or an opportunity to be heard. *See id.* § 22.077(b); *Hamilton*, 593 F. Supp. at 1296–97 (construing predecessor to section 22.077 and observing that if a municipal officer is charged with incompetency, misconduct, corruption, or malfeasance, the officer must be given due notice and an opportunity to be heard before removing the officer, but "[o]therwise—and this is clear—a city officer can be discharged at any time for 'a want of confidence' by a two-thirds vote of a city council"). The local government code thus does not give a city secretary the right to continued employment. *See* Tex. Loc. Gov't Code Ann. § 22.077 (allowing municipal officials' employment to be terminated and not restricting the grounds on which employment may be terminated). Accordingly, even assuming that subsection (a), standing alone, would give a municipal officer a property interest in continued employment, subsections (a) and (b), construed together, make clear that a municipal officer fired for "no confidence" has no such property interest. *See McDonald v. City of Corinth*, No. 4:94-CV-299, 1995 WL 908617, at *3 (E.D. Tex. Nov. 28, 1995) ("[A]s a matter of

30

law . . . an employee subject to termination by a 'no confidence' vote has no property interest in his position.") (citation omitted); *aff'd*, 102 F.3d 152 (5th Cir. 1996); *Hamilton*, 593 F. Supp. at 1297 (holding that a municipal officer, who by statute may be fired for no confidence without notice or a hearing, is an at-will employee).

*Finally*, although TOMA gave Swanson the right to have her employment discussed in an open meeting rather than in executive session, the TOMA notice and meeting requirements do not give Swanson a right to a particular form of notice or procedure before her employment may be terminated. TOMA provisions are for the benefit of the public as a whole, not specifically for conveying employment rights to public employees. *See Hays Cty. Water Planning P'ship v. Hays Cty.*, 41 S.W.3d 174, 178 (Tex. App.—Austin 2001, pet. denied) (noting that TOMA was enacted "for the purpose of 'assuring that the public has the opportunity to be informed concerning the transactions of public business'" (citation omitted)).

The Council here voted to remove Swanson on no-confidence grounds. Swanson does not allege that she was fired for incompetence, misconduct, corruption, or malfeasance, and the Town's evidence shows she was not fired for those reasons.[4] *Cf.* Tex. Loc. Gov't Code Ann. § 21.022 (West 2008) (providing

---

[4]We do not address whether a municipality may fire a municipal officer without notice and a hearing in retaliation for reporting a violation of law but defeat the officer's retaliation suit by claiming that the firing was due to "no confidence." *See, e.g., Flores v. Town of Combes*, No. 13-04-616-CV,

31

that, for purposes of judicial removal of a member of a municipality's governing body, "incompetency" means "(A) gross ignorance of official duties; (B) gross carelessness in the discharge of official duties; or (C) inability or unfitness to promptly and properly discharge official duties because of a serious mental or physical defect that did not exist at the time of the officer's election"). Even if we were to accept Swanson's allegation that the real reason for her firing was retaliation, the Town did not violate a property right in firing her for the simple reason that she has no such right.[5] *See Richards v. City of Weatherford*, 145 F. Supp. 2d 786, 790 (N.D. Tex.) (Mahon, J.), *aff'd*, 275 F.3d 46 (5th Cir. 2001) (dismissing municipal judge's due process claims in part because he "fail[ed] to

---

2006 WL 949960, at *2 (Tex. App.—Corpus Christi Apr. 13, 2006, no pet.) (mem. op.) (holding, in suit by former police chief who alleged a retaliatory firing, that town was not entitled to summary judgment on the merits because it had not proven as a matter of law that it would have fired the chief for no confidence in an absence of his reporting of alleged violations of the law). Swanson's Whistleblower Act and *Sabine Pilot* claims have already been dismissed, and they are not before us.

[5]As the Supreme Court aptly recognized over forty years ago regarding employment decisions and alleged violations of the U.S. Constitution, courts are

> not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error . . . . The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.

*Bishop v. Wood*, 426 U.S. 341, 349–50, 96 S. Ct. 2074, 2080 (1976).

32

cite any Texas statute, ordinance, contract, or caselaw recognizing a protected property interest").

We sustain the Town's third issue challenging the trial court's jurisdiction over Swanson's constitution-based UDJA claims.

## V. Swanson Did Not Allege a Viable Free Speech Claim.

The Town argues in its fourth issue that it is entitled to governmental immunity from Swanson's free speech claim under the Texas Constitution.

### A. The Town Was Not Entitled to No-Evidence Summary Judgment on Its Free Speech Claim.

The Town first argues that it was entitled to no-evidence summary judgment on the free speech claim because the elements of Swanson's claim are jurisdictional facts and she presented no evidence of her claim in response to its no-evidence motion. We overrule this part of the Town's fourth issue. *See Thornton*, 447 S.W.3d at 40.

### B. The Town May Not Appeal from the Denial of Its Traditional Summary Judgment Motion.

The Town next argues that it was entitled to traditional summary judgment on the claim for two reasons: first, because it presented evidence that Swanson's speech was made pursuant to her official duties as town secretary and second, as to Swanson's request for back pay and attorney's fees, because the Texas Constitution does not create a private right of action for money damages. The Town did not raise immunity as a ground for summary judgment on Swanson's free speech claim. Consequently, we may not review the trial

33

court's denial of its motion as to the free speech claim in this interlocutory appeal. Nevertheless, we must consider the jurisdictional arguments the Town makes now on appeal. *See Rusk State Hosp.*, 392 S.W.3d at 95.

## C. Swanson Failed to Allege a Viable Free Speech Claim Outside of Her Official Duties.

### 1. Public Employees Have Free Speech Rights.

The Texas Constitution authorizes suits against the government for equitable or injunctive relief for constitutional violations. *City of Hous. v. Downstream Envtl., L.L.C.*, 444 S.W.3d 24, 38 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (citing *Bouillion*, 896 S.W.2d at 148–49). Swanson sought reinstatement, and reinstatement of employment is an equitable remedy. *See Jacobs*, 382 S.W.3d at 599. But, as stated above, "this limited waiver of immunity exists only to the extent the plaintiff has pled a viable constitutional claim." *Downstream Envtl.*, 444 S.W.3d at 38.

"[C]itizens do not surrender their First Amendment rights by accepting public employment." *Lane v. Franks*, 134 S. Ct. 2369, 2374 (2014). To the contrary, "speech by public employees on subject matter related to their employment holds special value precisely because those employees gain knowledge of matters of public concern through their employment." *Id.* at 2379. A plaintiff has a viable constitutional free-speech retaliation claim when: "(1) they suffered an adverse employment decision; (2) their 'speech' involved a matter of public concern; (3) their interest in commenting on matters of public concern

34

outweighed their employer's interest in promoting efficiency; and (4) their speech motivated the adverse employment decision." *See Caleb*, 518 S.W.3d at 544 (citing *Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001)).

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421, 126 S. Ct. 1951, 1960 (2006); *see also Caleb*, 518 S.W.3d at 544. The extent to which a public employee's speech is protected by the First Amendment "depends on a careful balance 'between the interests of the (employee), as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Lane*, 134 S. Ct. at 2374 (citation omitted). The question is "whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Id.* at 2379.

Even if the speech at issue relates to the employee's job duties, the speech may in some cases still be considered citizen speech. "[W]hen a public employee raises complaints or concerns up the chain of command at his workplace about his job duties, that speech is undertaken in the course of performing his job." *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008). "If, however, a public employee takes his job concerns to persons outside the work place in addition to raising them up the chain of command at his workplace, then

35

those external communications are ordinarily not made as an employee, but as a citizen." *Id.*

### 2. Swanson's Speech Regarding Town Records Was Employee Speech, not Citizen Speech.

Here, Swanson pled that she reported three acts that she alleged were violations of the law: (1) the mayor destroying the recording of the investment committee meeting; (2) the mayor removing recordings of meetings from town hall; and (3) the mayor intending to call Swanson to a meeting under false pretenses to obtain her resignation. Swanson's pleadings do not allege facts addressing whether her speech was made in the course of her job duties. The record, on the other hand, addresses the question with respect to the alleged violations related to Town records and whether the reporting was citizen speech. *See Heckman*, 369 S.W.3d at 150 (compelling the granting of a jurisdictional challenge if the governmental entity presents undisputed evidence that negates jurisdiction).

*First*, the record before us shows that the speech was within Swanson's job duties. When asked at her deposition if she thought she was doing her job to tell the Town attorney and Council that the mayor had violated the law by asking for meeting tapes to bring home, Swanson testified, "I think I was doing my job, yes." *See Garcetti*, 547 U.S. at 424, 126 S. Ct. at 1961 (pointing out that the plaintiff conceded that his speech was made pursuant to his employment duties and that the court therefore need not "articulate a comprehensive framework for

36

defining the scope of an employee's duties in cases where there is room for serious debate"). Swanson thus conceded that her job duties included reporting perceived violations of laws related to town records by members of the governing body.

*Second*, Swanson's pleadings and the evidence show that her reports for each of the alleged incidents were made up the chain of command at the Town, not outside of it. Swanson alleged that she reported issues to individual councilmembers,[6] the Council as a whole, the mayor, and the Town attorney. The Town's aldermen and mayor, as members of the Town's governing body, were up the chain of command. *See* Tex. Loc. Gov't Code Ann. § 22.031 (providing that the governing body of a Type-A municipality is made up of the mayor and aldermen). The record does not clearly establish the Town attorney's position within the chain of command for Town employees. However, Swanson testified in her deposition that she told the Town attorney because she believed that he was someone who "should enforce any violations" and that he "was the appropriate person for [her] to report a violation of the law" to, and she hoped he would "make sure they were following the law." She also testified that the Town attorney was a person "who would give [her] direction as to the work

---

[6]Although Swanson referred to "councilmembers" in her petition, the Town is a Type-A municipality, and therefore its governing body is made up of aldermen. *See* Tex. Loc. Gov't Code Ann. § 22.031 (West 2008).

37

[she was] responsible for doing." She thus made her reports to him as someone who was up the chain of reporting responsibilities at the Town.

*Third*, while Swanson further testified that she also told an investigator with the district attorney's office, she could not remember ever telling anyone that she had done so. The Town therefore could not have been retaliating against her for making that report when it terminated her employment. *See Caleb*, 518 S.W.3d at 544.

In summary, for the reports regarding Town records, Swanson's pleadings did not allege speech outside the chain of command or outside her job duties, and the Town's evidence established that her speech was within the chain of command and concerned matters within her job duties. Because Swanson therefore did not allege a viable First Amendment claim based on this employee speech, the trial court had no jurisdiction over her claim.

### 3. Swanson's Speech About the Mayor's Planned Meeting Was Not Entitled to First Amendment Protection.

Regarding Swanson's claim that the mayor intended to call her into a meeting under false pretenses, Swanson's petition also fails to allege a viable First Amendment claim. Swanson pled that she reported to the Town attorney and to the Council that the mayor had intended to call her into a meeting under false pretenses in order to ask her to resign. (Although Swanson's petition does not elaborate on this allegation, in her deposition she explained that she learned about the mayor's intention by reading the mayor's email while searching for a

different email at the mayor's request.)  For this speech to be protected, it had to relate to a matter of public concern.  *See Caleb*, 518 S.W.3d at 544.  Assuming that by enacting local government code section 22.077, the legislature indicated that the termination of employment of a city secretary is a matter of public concern, it has given no such indication for the kind of circumstance alleged by Swanson.  Swanson's pleadings did not allege any basis to consider the mayor's unacted-upon plan to meet with Swanson to ask for her resignation—even if she did not intend to tell Swanson the true reason for the meeting ahead of time—to be matter of public concern.

Because the pleadings and evidence negated any violation of Swanson's free speech rights, the trial court had no jurisdiction over any claim seeking reinstatement or other equitable relief based on such speech.  Accordingly, we sustain the Town's fourth issue.

### VI.    The Trial Court Could Not Grant the Town's No-Evidence Summary Judgment Motion on Immunity Grounds.

In the Town's fifth and sixth issues, it argues that it properly identified the grounds for its no-evidence motion for summary judgment and that governmental immunity is properly raised in a no-evidence motion for summary judgment. These issues address Swanson's trial court objections to the Town's no-evidence summary judgment motion.   As discussed herein because we hold that a governmental entity may not raise immunity in a no-evidence summary judgment motion, we overrule both issues.

## VII.    Conclusion

Having overruled the Town's first, second, fifth, and sixth claims we affirm the trial court's order denying summary judgment for the Town on Swanson's UDJA claims seeking a declaration that the Town's termination of her employment was void under TOMA; injunctive relief relating to making agendas and meeting recordings for past and future Town meetings available to the public; and attorney's fees for those claims based on TOMA violations.  Having sustained the Town's third issue in part and the Town's fourth issue, we dismiss for lack of jurisdiction Swanson's UDJA claims for back pay; her UDJA claims based on violations of her rights under article I, section 9 of the Texas Constitution, seeking both reinstatement and declaratory relief; and her free speech claim.

/s/ Mark T. Pittman
MARK T. PITTMAN
JUSTICE

PANEL:  SUDDERTH, CJ.; KERR and PITTMAN, JJ.

DELIVERED:  January 18, 2018

40